### FINEFROCK v. CARNEY et al.
#### No. 35826.
Supreme Court of Oklahoma.
Nov. 24, 1953.

Keaton, Wells, Johnston & Lytle, Oklahoma City, for plaintiff in error.

Hal Whitten, Whitten & Whitten, Oklahoma City, for defendants in error.

O'NEAL, Justice.

This is an appeal from the Court of Common Pleas of Oklahoma County. The parties are referred to here as they appeared in the trial court.

E. F. Carney and Enola Carney, husband and wife, on August 1, 1950, entered into a written contract with the defendant, E. E. Finefrock, for the purchase of a six room house then under construction by the defendant in Oklahoma City, Oklahoma. Prior to the execution of the contract the defendant furnished plaintiffs a copy of the plans and specifications under which the defendant, as the contractor and the owner, was constructing the house. These plans and specifications provided that the walls and ceilings would be constructed of sheet rock. Sheet rock is a patented sheet which is nailed to the studding, taped and thereafter painted. From the testimony of several witnesses we are informed that walls and ceilings so constructed are not subject to crack as a plaster finish is inclined to do.

Prior to the signing of the contract of purchase the plaintiffs advised the defend-

ant that they had experienced considerable trouble with cracking walls in their former home, and that if they could be assured that the walls of the house would not crack, they would purchase it for a consideration of $13,000. The defendant advised the plaintiffs that due to a shortage of sheet rock that he had to use a plaster in the construction of the house; that he had made an investigation of a plaster product patented under the name of "Perlite," and that the Perlite product which he had placed upon the ceilings and the walls of the house had a uniform thickness of one-half inch and was as good or better than the one-half inch sheet rock which the specifications called for. Defendant further stated that the Perlite product was a new and very good material for the walls and would not crack like ordinary plaster. Upon the assurances so made, plaintiffs purchased the house and upon its completion took possession thereof on September 15, 1950.

Some weeks thereafter plaintiffs observed cracks developing on the walls and ceilings in several of the rooms. Upon complaint being made to the defendant he examined the walls and expressed the opinion that the plaster was put on too thin. He thereupon instructed his employees to close up the large cracks on the walls and holes which had developed near the casings of the doors and windows.

Sometime later the defendant sent out a painter to repaint the ceilings but the plaintiffs would not permit a repaint job for the reason that the cracks had not been properly closed. At plaintiffs' request two sheet rock contractors examined the house and testified that the plaster was put on too thin, and that the cost of removing the plaster and repairing the work would be from $1 to $1.50 a square foot. Plaintiffs lodged a complaint with reference to the defective plaster with the F.H.A. and they sent out their construction engineer to make an examination of the house. The report of the F.H.A. engineer, introduced in evidence without objection, discloses the following:

"Per your request I visited the above location to check on such items as plaster cracks and failure of tile wainscot in the bath. The following conditions exist:

"a. There are numerous fine line cracks in all the ceilings; and some in the side walls, but only serious enough to require correction in the Northeast bedroom, den, living room, dining room and kitchen. On removal of a ceiling fixture it appeared that the plaster (which is Vermicilite insulating plaster), is only about $1/4''$ to $3/8''$ thick, applied over $1/2''$ insulating lath."

The F.H.A. engineer testified that he had had twenty-five years experience in the construction business and stated that the defect in the plaster could have been in the mixture at the time it was applied; could be in drying time; could be in how it was applied, and what it was applied to, and what it was applied on.

In response to a question as to the cause of the cracks he testified that the cracks were not due to wall failure or foundation failure, because the cracks were not all in one direction, but there were numerous cracks which ran in all directions. These cracks were characterized by plaintiffs as similar to a spider web in form. Mr. Carney testified that he drilled several holes in the plaster and found it ranged from one-eighth to three-eighths of an inch in thickness.

The defendant testified that he made no representations to the plaintiffs with reference to the walls or ceilings when the contract was entered into, but that at a later date, when the carpenters completed the trim-out, he advised plaintiffs that it was his experience that all houses would crack and it would be better and cheaper to repair the cracks on walls that had not been papered. He further testified that his first experience in the use of the Perlite product was on the houses he was then constructing in the vicinity of the plaintiffs' residence, and that in the application of the Perlite product he had followed the recommendations of the manufacturer of the product in its use.

The jury, by agreement of the parties, inspected the house with reference to the alleged defective walls and ceilings, and

upon the submission of the case they returned a verdict in favor of the plaintiffs in the amount of $1,435.

The appeal of the defendant challenges the sufficiently of the evidence to sustain the plaintiffs' allegations of fraud and the proof in support thereof. The further ground urged is that the instructions are inconsistent and therefore prejudicial.

As we view the evidence, the jury could and did find (a) that the defendant made a material representation of an existing fact, in that defendant represented that the Perlite product was as good or better than the sheet rock product; (b) defendant admitted that apparently the Perlite product was not as good as he thought it would be, and that this was his first experience with the product and that his reliance thereon was based solely upon the representations made by the manufacturer thereof. The representation thus made was false. Moreover, his representation that Perlite was generally applied at one-half inch thickness was not supported by the statements made by him to plaintiffs; (c) when defendant made the representations he knew them to be untrue, or he made them in reckless disregard without knowledge of their truth, and as a positive assertion; (d) the evidence is without substantial dispute that instead of a one-half inch coat of Perlite plaster applied that it in fact ranged from one-eighth to three-eighths inches; although Midwestern Perlite Corporation's standard specifications introduced by defendant disclosed that the minimum requirement is a one-half inch application, the evidence does not support such an application; (e) the evidence further discloses, by defendant's admission, that he was continuously about the house during the time the Perlite plaster was being applied. As an experienced builder he knew, or should have known, that the thickness of the plaster did not meet the manufacturer's specifications; (f) it requires no analysis of the testimony to reach the conclusion that defendant intended that plaintiffs rely upon his representations. The evidence is conclusive that they repeatedly advised defendant that if the Perlite would not crack they would close the deal as they liked the house and wanted to use it as their residence; and (g) the proof clearly sustains plaintiffs' allegations that they relied upon the representations made by the defendant and his assurance as to the quality and quantity of the Perlite plaster applied.

■ Fraud is never presumed, but must be proven by clear and satisfactory evidence. Jungels v. Town of Hennessey, 202 Okl. 619, 217 P.2d 167; Downtown Chevrolet Co. v. Niccum, 180 Okl. 616, 71 P.2d 957.

■ Measured by this principle of law, we are of the view that the evidence sustains the allegations of proof required by the rule announced in Miller v. Long, 202 Okl. 34, 210 P.2d 147.

One element of the alleged fraud was the shortage of the quantity of the Perlite plaster applied to the ceilings and walls. In Leasure v. Hughes, 72 Okl. 75, 178 P. 696, we held:

"When a seller misrepresents the quantity of the subject-matter of the sale, and he is in a position to know the quantity, or to form a reasonably accurate estimate thereof, and the purchaser is not in such position, and the seller falsely and fraudulently misrepresents the quantity, and such misrepresentation is relied upon by the purchaser, such misrepresentation amounts to fraud."

■ Another element of the alleged fraud was the representation as to the quality of the Perlite applied. In Miller v. Troy Laundry Machinery Co., Inc., 178 Okl. 313, 62 P.2d 975, we held:

"A representation concerning the quality of property bought unseen may be the basis of fraud inducing contract of sale."

In Humphrey v. Baker, 71 Okl. 272, 176 P. 896, we held:

"False representations, made in an exchange of a pair of mules for a pair of mares, as to the age, condition, and ability of the mules to do certain railroad construction work, for which they were wanted, and that they were as good as a certain other team with which both parties were familar, were

not mere expressions of opinion as to value, but amounted to representations of material extrinsic facts affecting value, and are sufficient on which to predicate action for fraud."

Clearly, the damage suffered is established beyond dispute, and the amount of the verdict has not been challenged.

The remaining challenge is directed to the court's instructions. Defendant's contention is that the court's instructions are conflicting and therefore confused the jury.

■ The trial court gave defendant's instruction No. 2 to the effect that the mere fact that there were cracks in the plaster is no evidence of fraud, and also defendant's requested instruction No. 3 that plaintiffs could not recover unless the jury found that the defendant made the statements in bad faith, knowing them to be incorrect, and were made with intent to defraud plaintiffs. The inconsistency claimed by defendant is based upon the court's instruction No. 4, in which he advised the jury that the burden was on the plaintiffs to establish the material allegations of their petition by a preponderance of the evidence, and that, thereafter, in his Instruction No. 6, advised the jury that fraud is never presumed but must be proven by clear, cogent and convincing evidence on the part of the plaintiffs in this case.

We find that the court in its Instruction No. 10 again placed the burden upon the plaintiffs to establish their cause of action by clear, positive and convincing evidence that the defendant made the false and fraudulent representations with reference to the construction of the house complained of in the petition.

■ We find no such inconsistency in these instructions as to warrant the reversal of this case; nor do we find that the defendant has assumed the burden of showing that the representations as a whole were prejudicial and resulted in a miscarriage of justice.

The judgment is therefore affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, DAVISON, WILLIAMS and BLACKBIRD, JJ., concur.