347 P.2d 696

E. J. POLEY and Elizabeth M. Poley, his wife, Appellants,

v.

O. L. BENDER and Laura M. Bender, his wife, Appellees.

No. 6574.

Supreme Court of Arizona.

Dec. 23, 1959.

Rehearing Denied Jan. 19, 1960.

Locklear & Wolfinger, Prescott, for appellants.

Charles E. McDaniel and Jack L. Ogg, Prescott, for appellees.

UDALL, Justice.

This is an action in tort for fraud and misrepresentation as to the adequacy of a domestic water supply in the sale of a ranch. O. L. Bender, purchaser of the ranch and appellee herein, chose not to sue for rescission and restitution based on the claimed misrepresentation; instead he elected to affirm the sale and sue for damages for the alleged fraud. The action was brought in the Superior Court of Yavapai County, wherein the court, sitting without a jury, rendered judgment on the complaint for the plaintiff and assessed damages against the seller, E. J. Poley, in the amount of $1,717.31. This appeal followed.

The following facts are undisputed:

The defendant-appellant E. J. Poley (hereinafter referred to as Poley) was, since 1924, the owner and operator of what is locally known as the "Poley Ranch" in the Tonto Springs-Skull Valley area, located some 20 miles west of Prescott. In the first year after he moved on to the ranch—some time in 1925—a well, some 3 feet in diameter and 150 feet deep, was dug by hand on the property. The water pump was first operated by a 3 horsepower gas engine; in later years the engine was replaced by a windmill. Poley used a 1,000-gallon storage tank and two water troughs with an aggregate capacity of approximately 2,000 gallons. During the years that Poley and his wife lived on the ranch, they wholly relied upon this well to supply water for their house, livestock (he had a permit to run 36 head of cattle), flowers, trees, and shrubbery. In addition, Poley frequently gave water to neighbors and passers-by who ran short (reportedly including Bender, who needed water while

he was drilling the well on his own property). As Poley said on the witness stand, "Everyone short of water, didn't have a well, mine was it." No evidence was presented to contradict the showing made by defendants that there was sufficient water for these purposes during the 27 years the Poleys occupied the ranch. On the contrary, all the testimony covering this period tended to support Mrs. Poley's statement that, "We had all the water for everything we wanted."

On October 7, 1952, Poley conveyed the ranch property (a homestead entry) to O. L. Bender, the plaintiff-appellee herein (henceforth referred to as Bender). Bender did not take possession of the premises until early in January, 1953, at which time his son-in-law, Richard Hargus, moved onto the ranch. At that time the old 1,000-gallon storage tank used by Poley was replaced by a tank with a 2,000-gallon capacity.

About a week or ten days after Hargus took possession of the ranch for Bender, it was testified that they began to experience trouble with the well. When they were unable to get any water, Bender and Hargus pulled the cylinder pump rod and found that the "leathers" had worn out. As described in the record, the "leathers" are the leather couplings on the plunger of the pump which operate to seal the water in and prevent it from escaping as it is pulled up by the pump action. It appears that the regular submersion in the water is generally sufficient to lubricate the leathers and to keep them from wearing out. However, if the pump is operating in a dry hole without this natural lubrication effect, the friction will wear away the leathers in a short time. When the leathers are worn out, the sealing of the plunger is ineffective and the pump fails to pull any water.

Poley testified that during his long occupancy of the ranch he had not needed to change the leathers more than twice; whereas Bender and Hargus both stated that they found it necessary to replace the leathers three times in some 30 days. They further testified that—after the leathers had been replaced—the well would function satisfactorily for a week or ten days; then the leathers would wear out again and the pump would cease to function.

At the trial Bender introduced evidence of occurrences after he took possession of the ranch in January 1953. This evidence was not substantially contradicted, and the facts adduced from a physical inspection of the well bottom are as follows: the maximum depth of water standing in the well was variously estimated at from 15 inches to 3½ feet (Poley had said that he thought the well held 3½ to 4 feet of water); at the high-water level the capacity was estimated to be some 100 gallons; when the well had been pumped dry (by the use of a special portable submersible pump capable of pumping 20 gallons a

minute) it required about three hours for the underground water to trickle in and refill the sump; Bender timed it, and he stated that the water therein would run the pump jack for about 10 or 12 minutes, after which—if the windmill was kept running—the pump ran on a dry cylinder until the well refilled. By periodically turning off the windmill and allowing the water level to rise to capacity, it was found that the well would produce approximately 500 gallons per day.

Rather than continue at this rate, Bender hired a well-driller to improve the well. As a result of this, an 8-inch shaft was drilled down another 150 feet, making the total depth some 300 feet. A good flow of underground water was encountered that produces 10 gallons a minute continuously, and it cannot be pumped dry with the submersible pump equipment. It is the cost of this new drilling and pipe which Bender sought to—and by the court's judgment did —recover in this action.

The representation upon which Bender bases his complaint was admittedly made by Poley shortly before the date of the sale, i. e., October 7, 1952. It is alleged in the complaint, and is expressly admitted by Poley in his answer thereto, that

"there was a good domestic well on the premises and the well would furnish sufficient water for the proper operation of the pump and windmill located on the premises."

The primary defense relied upon by Poley at the trial—and the basis for his sole assignment of error—was that the actual falsity of this statement had never been established, and that in his bona fide opinion this was in fact a "good domestic well". Bender, on the other hand, asserted that the well produced so little water that it could not properly be operated, and that, in effect, " * * * Mr. Poley had sold me a dry hole in the place of a good well."

It should be borne in mind that this was entirely an "arms length" transaction. Poley and Bender were both ranchers; in fact, Bender had recently purchased a ranch adjacent to that which he later bought from Poley. At the time of the negotiations, Bender asked Poley—apparently several times—how much water the well would produce. All witnesses agree—including Bender—that Poley answered that he did not know at what rate water could be drawn from the well, that he had "never measured it."

As noted above, the specific evidentiary facts as related by the respective parties are not in dispute. It is clear that Poley, during his occupancy, did have water and that—to all appearances—this water supply was sufficient for his purposes. It is equally clear that Bender—although he was able to get some 500 gallons per day out of the well—was not able to extract enough water to satisfy him and that it was the "opinion"

of both him and his witnesses that this was not "a good domestic well".

Nor is there any serious controversy as to the legal principles applicable. It is well settled in Arizona that an action for fraud must be based upon nine elements, which include the actual falsity of the representation alleged, as well as defendant's knowledge of that falsity or ignorance of the truth of the matters presented. See, Waddell v. White, 56 Ariz. 420, 108 P.2d 565; Wilson v. Byrd, 79 Ariz. 302, 288 P.2d 1079; Koen v. Cavanagh, 70 Ariz. 389, 222 P.2d 630; Rice v. Tissaw, 57 Ariz. 230, 112 P.2d 866. Proof of all nine of these essential elements of fraud must, in this state, be clear and convincing. Smith v. Pinner, 68 Ariz. 115, 201 P.2d 741; Cole v. Town of Miami, 52 Ariz. 488, 83 P.2d 997.

We have repeatedly emphasized that this Court is not the trier of the facts. However, we do have the duty to review the evidence and to determine whether, as a matter of law, the trial court's judgment is supported by clear and convincing evidence sufficient to justify a finding of fraud.

Bender asserts that he has proved the fraud by clear and convincing evidence. Poley denies this and maintains that the evidence does not even prove that this was not a "good domestic well". The real dispute in this case is as to the allowable inferences which may be drawn from the admitted facts.

Upon the given facts, the trial court apparently inferred that Poley, in October 1952, knew that this was not a "good domestic well" but was in fact insufficient for any practical purpose, and that he consciously misrepresented the facts in order to induce Bender to purchase the ranch. On this basis judgment was rendered for Bender. On the other hand, it might also be inferred that the representation made by Poley was true—or nearly enough so that it fell within the allowable limits of a vendor's recommendation of his property to a prospective purchaser—and that the troubles which befell Bender resulted from his doubling the capacity of the storage tank and trying to run the pump continuously in order to supply this new facility. A determination of this appeal turns on the question of whether the trial court was justified in drawing the inference which it did.

The key phrases in the representation relied upon are: "good domestic well", "sufficient water", and "proper operation of the pump and windmill". It is obvious that the indefinite adjectives "good", "sufficient", and "proper", are—at least in this context—too vague to be taken as anything other than reflections of the

40

opinion of the speaker. See, Else v. Freeman, 72 Kan. 666, 83 P. 409. There is nothing in these words to indicate that the well would, as a matter of fact, make a certain number of gallons per day—be it 500 or 5,000. It is well settled that actionable fraud cannot be based upon an expression of opinion. Law v. Sidney, 47 Ariz. 1, 53 P.2d 64; Waddell v. White, supra. There is certainly no clear and convincing evidence to show that—from *Poley's* point of view—this well was not "good", "sufficient", and "proper". If the admitted representation involved no misstatement of actual facts, then there was no actionable fraud.

We held, in Sunseri v. Katz, 53 Ariz. 234, 87 P.2d 797, that the following was a correct statement of the law:

"Fraud is never to be presumed, but must be affirmatively proven by the party alleging the same. The law presumes that all men are fair and honest —that their dealings are in good faith, and without intention to disturb, cheat, hinder, delay or defraud others; where a transaction called in question is equally capable of two constructions—one that is fair and honest and one that is dishonest—then the law is that the fair and honest construction must prevail and the transaction called in question must be presumed to be fair and honest." 53 Ariz. 239, 87 P.2d 798.

In the light of this rule—and the rule requiring proof of the elements of fraud by clear and convincing evidence—we hold that the trial court erred in finding that actionable fraud had been committed in this case.

Judgment reversed.

PHELPS, C. J., and STRUCKMEYER, JOHNSON and BERNSTEIN, JJ., concur.