**Jeff HALL and Suzanne Hall, Appellants,**

v.

**Herman EDGE,\* d/b/a Edge Energies, and Ronald W. Jackson, d/b/a Ronald W. Jackson & Company, Appellees.**

**No. 65592.**

Supreme Court of Oklahoma.

Oct. 31, 1989.

---

\* Herman Edge d/b/a Edge Energies has taken no part in these proceedings on appeal.

Jeff Hall, Tulsa, pro se.

Suzanne Hall, Tulsa, pro se.

Frank R. Hickman, Hickman & Hickman, Tulsa, for appellee Jackson.

SUMMERS, Justice.

Jeff and Suzanne Hall sued in small claims court to recover funds invested in unsuccessful oil and gas drilling ventures. After removal to the district court they amended their petition to allege that Defendant Jackson, as a "Certified Public Accountant who was the accountant for these Drilling Ventures and who had professional and confidential knowledge of the financial situation of each," had committed fraud against them by verbally misrepresenting drilling ventures as good investments when he knew or should have known of the falsity of the statements, and that the Halls had relied to their detriment upon these misrepresentations. Plaintiffs had also filed an action for fraud, violation of securities laws and conversion against Herman Edge, d/b/a Edge Energies, the general partner of the limited partnerships. That part of the action was stayed when Edge Energies declared bankruptcy. After considerable paper litigation, Suzanne's action was dismissed for her failure to appear, and Jackson was granted summary judgment.

Jeff Hall then filed a motion to vacate the summary judgment. That motion was overruled and the Court granted Jackson an additional judgment for attorney fees in the sum of $3,000.00.

Plaintiffs appealed. The Court of Appeals affirmed the trial court's orders and we have earlier granted certiorari. We now hold as follows: (1) The appeal from the order of dismissal of Suzanne Hall is not properly before us. (2) The order granting summary judgment must be reversed. (3) So must the order awarding attorney fees. The opinion of the Court of Appeals·is vacated and we remand for further proceedings by the trial court.

■ Before we discuss the merits of this case two procedural matters must be addressed. Hall has filed a "Motion to Strike" requesting that the Court of Appeals opinion be stricken. We deem the Motion to Strike moot because we have previously granted certiorari and herein vacate the Court of Appeals opinion.

■ The next procedural issue is whether Hall preserved for appellate review his objections to the summary judgment. The summary judgment was pronounced on September 12, 1985 and on Monday, September 23, 1985, Hall filed a motion to vacate it. A motion seeking vacation of a judgment which is filed within 10 days of the decision may be regarded as the functional equivalent of a motion for new trial. *Horizons, Inc. v. KEO Leasing Co.*, 681 P.2d 757, 759 (Okl.1984). Hall's motion to vacate thus extended the time within which to appeal and preserved issues for our appellate review.

## I. DISMISSAL OF SUZANNE HALL

■ The trial court dismissed Suzanne Hall's petition for her failure to appear. The Court of Appeals affirmed the trial court's refusal to set aside its prior dismissal of Suzanne as a plaintiff. We find, however, that no appellate jurisdiction exists to review her dismissal. This court has a duty to inquire into its jurisdiction. *Matter of Initiative Petition*, 718 P.2d 1353, 1354 (Okl.1986). Suzanne was dismissed as a party on June 21, 1985. On July 1, 1985 she filed a motion to set aside the dismissal, which motion was denied on August 7, 1985. Jackson's motion for summary judgment was granted on September 12, 1985. On September 23, 1985, the Halls filed a "Motion to Vacate the Summary Judgment and Set Aside Dismissal". The "dismissal"

argument of that motion concerned the "dismissal" of Jackson as a party due to the order sustaining the motion for summary judgment. Suzanne did not appeal the August 7, 1985 ruling within thirty (30) days. Thus our appellate jurisdiction has not been invoked to review her dismissal by the trial court. 12 O.S.1981, § 990. We must leave intact the trial court's dismissal of Suzanne Hall as a party.

## II. SUMMARY JUDGMENT FOR THE DEFENDANT

Jeff Hall's complaint against Jackson may be summarized as follows: 1. Jackson was the accountant for Edge Energies' limited partnerships; 2. In February of 1983 when Hall told one of the general partners of the limited partnerships that he did not want to invest in the ventures the general partner invited him to call Ron Jackson, a Certified Public Accountant, "who was the accountant for these Drilling Ventures and who had professional and confidential knowledge of the financial situation of each and who could vouch for their worth as an investment" (Amended Petition,); 3. Jackson said to Hall that Edge Energies' limited partnerships were a "good deal", that they were "good moneymakers", and "they were expecting something like a two-year payoff" (Tr. at 37); 4. Jackson was dissatisfied with some Edge Energies drilling ventures in the spring of 1982 due to mismanagement by the operators; 5. Jackson knew in 1982 that some of the Edge Energies' partnerships were bad investments; 6. Jackson was an investor in drilling venture 1982–VI; 7. Jackson did not limit his recommendation of Edge Energies' partnerships to specific partnerships; 8. Hall relied on the recommendation of Jackson and invested in Edge Energies' drilling ventures 1982–VI and 1982–VIII; and 9. Hall lost his investment.

Hall attached to his amended petition pages of a deposition of Jackson in a different case pertaining to investments in Edge Energies' partnerships. This testimony states in part:

"Q. And you knew the Mays were bad wells.

A. I knew the Mays were not producing very well, and still, at that time no determination by the operator had been made to dry-hole them.

Q. But that didn't change the fact they were bad wells.

A. I would agree. Bad as far as whoever invested in them. I would say that their potential of ever getting their money back was very slim." (O.R. at 44).

"Q. When did you first become dissatisfied with your investment in these limited partnerships? ...

Q. I take it you're telling me that you cannot identify any particular time when you became dissatisfied with your investment.

A. I think the dissatisfaction of my investment came gradually over time, probably starting with the spring of 1982, learning things like the tanks weren't being gauged at temperature when the trucks were coming up, that the tanks weren't locked. The indecision of the May well of whether to dry-hole it or shut it down, yet they continued charging operating expenses and continued operating.

Q. And that happened in the spring or summer of 1982.

A. That's right...." (O.R. at 45–46).

In support of his motion for summary judgment Jackson relied on Hall's deposition. Hall had testified that the conversation with Jackson was "short", that they talked in "generalities", that Jackson stated that drilling ventures of Edge Energies were a "good deal", "good moneymakers", and that they were expecting a "two year payback". Jackson argued that he made "a statement as to all drilling ventures of Edge Energies" but that he made no specific representations concerning drilling ventures 1982–VI and 1982–VIII. Jackson contended that the statements were true when made because the drilling ventures of Edge Energies were often profitable resulting in returns to investors. He also argued that no special relationship existed with

Hall which would require Jackson to disclose any information to Hall. Jackson argued that because no specific representation occured as to ventures 1982–VI and 1982–VIII, no material false misrepresentation of fact was made. Jackson concluded that Hall had failed to show all of the elements of fraud.

Hall responded and also moved for summary judgment. Attached to Hall's response was the excerpt from Jackson's deposition earlier referred to showing Jackson's dissatisfaction in 1982 with some investments in Edge Energies partnerships. Also attached was a report prepared by Jackson on February 7, 1983 on drilling venture 1982–VI for the limited partners of the venture. Hall asserted that the report was undisclosed to him at the time of his conversation with Jackson on February 11, 1983, and that the report showed an eleven-year payback on the venture. Hall also stated that the general partner (defendant Edge) owed $34,046.43, on December 31, 1982, to an Edge partnership for money collected to drill two wells which had not been drilled. In connection with this allegation Hall attached material from Jackson's deposition which indicated that on December 31, 1982, there was $2.00 in the partnership bank account. Although Hall did not link up this material with particular limited partnerships, Hall attached material from a publication stating that an auditor of drilling partnerships should be particularly concerned with commingling of partnership funds and the funds of the sponsor. Hall argued that this had appeared to have happened. Hall also asserted that partnership funds were not being held in escrow prior to any drilling activity and that an auditor should be concerned with this as well. (O.R. 357–359). In summary, Hall argued that Jackson either knew that the drilling ventures were not good deals or good money makers with a two-year payback, or had made the representations without a reasonable ground for believing them to be true at the time of the phone conversation.[1]

■ In *Dawson v. Tindell,* 733 P.2d 407 (Okl.1987) we said of fraud:

"The elements of actionable fraud are material, false representations which are made with knowledge of their falsity, or recklessly made without knowledge of their truth and as a positive assertion, with the intention that they be acted upon by another, and relied thereon by another party to his injury." *Id.* 733 P.2d at 408.

Generally, the false representation must be a statement of existing fact and not a mere expression of opinion. *Greene v. Humphrey,* 274 P.2d 535, 537 (Okl.1954); *Hazlett v. Wilkin,* 140 P. 410, 412 (Okl.1914). For example, a seller's opinion which is nothing more than "puffing"[2] will not give rise to an action based on misrepresentation. *Presidio Enterprises, Inc. v. Warner Bros. Distributing Corp.,* 784 F.2d 674 (5th Cir.1986). However, courts have fashioned several exceptions to this general rule and will allow, under certain circumstances, a cause of action based on a false representation which was in the form of an opinion.

One court explained three exceptions to this general rule as follows:

"Where circumstances indicate that the parties did not stand in a position of parity and normal wariness with respect to the subject of the representation, however, exceptions have been carved out of the general rule. Most of these exceptions derive their legitimacy from circumstances that would lead the reasonable

---

1. Hall argued on appeal that he had a cause of action based on the Oklahoma Securities Act. 71 O.S.1981 § 1 et seq. Although he refers to this case as a "simple security fraud case" in his petition for certiorari, his failure to argue this issue with relevant authority on certiorari waives it for our review.

2. Puffing is praising, extolling, or commending in inflated or extravagant terms and is usually

from interested motives. 12 *The Oxford English Dictionary,* 796 (2d ed 1989). The exaggerated praise "is considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer, and on which no reasonable man would rely". W. Keeton, and W. Prosser, *Prosser and Keeton on the Law of Torts,* § 109 at 757 (5th ed 1984).

person to believe that implicit in the prediction or opinion is an assertion of fact upon which the recipient of the representation might prudently rely. Where the person making the representation occupies a fiduciary or other position of trust for the recipient of his remarks, for instance, the recipient may be justified in assuming the correctness not only of factual representations but also of opinions.... Since partners as to partnership matters are fiduciaries *inter se*, it is often found that partners were entitled to rely on the opinions of their colleagues.

Another exception to the general requirement that the misrepresentation be one of existing fact appears in the situation where the speaker may reasonably be understood as having based an opinion or prediction on facts that are unavailable to the listener either because he does not have access to them or because he is obviously incapable of interpreting them. Still a third exception is based upon the logical assumption that one who asserts that a future event will come to pass impliedly warrants that he knows of no fact that will prevent its occurrence." *Day v. Avery,* 179 U.S.App.D.C. 63, 548 F.2d 1018, 1026–1027 (D.C.Cir.1976), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977), (footnotes omitted). See also, *Kropinski v. World Plan Executive Council–US,* 853 F.2d 948, 953 (D.C.Cir.1988).

These exceptions are expressed in the Restatement (Second) of Torts. *Id.* at § 542.[3] *See also, Walters v. First Fed. S & L Ass'n. of Phoenix,* 131 Ariz. 321, 324, 641 P.2d 235, 238 (1982). Professors Prosser and Keeton have explained this principle as follows:

"[I]t has been recognized very often that the expression of an opinion may carry with it an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which justify it. There is quite general agreement that such assertion is to be implied where the defendant holds himself out or is understood as having special knowledge of the matter which is not available to the plaintiff, so that his opinion becomes in effect an assertion summarizing his knowledge. Thus, the ordinary man is free to deal in reliance upon the opinion of an expert jeweler as to the value of a diamond, of an attorney upon a point of law, of a physician upon a matter of health, of a banker upon the validity of a signature, or the owner of land at a distance as to its worth, even though the opinion is that of his antagonist in a bargaining transaction." W. Keeton, and W. Prosser, *Prosser and Keeton on the Law of Torts,* § 109 at 760–761 (5th ed. 1984).

Reliance on an opponent's knowledgable opinion as an element of fraud has been recognized in this jurisdiction. *St. Louis & S.F.R. Co. v. Reed,* 37 Okl. 350, 132 P. 355 (1913). In this case the plaintiff relied on a company physician's opinion. She alleged that the physician told her she "was but slightly injured and would recover her health in a short time, and that her injuries consisted of only slight bruises and the shock and jar of the cars at the time of her attempt to enter said cars, that she was scared worse than she was hurt, and that she would never know she had been hurt

---

**3.** Section 542 states:

"The recipient of a fraudulent misrepresentation solely of the maker's opinion is not jusitified in relying upon it in a transaction with the maker, unless the fact to which the opinion relates is material, and the maker

(a) purports to have special knowledge of the matter that the recipient does not have, or

(b) stands in a fiduciary or other similar relation of trust and confidence to the recipient, or

(c) has successfully endeavored to secure the confidence of the recipient, or

(d) has some other special reason to expect that the recipient will rely on his opinion."

Comment f to § 542 states in part:

"The complexities and specializations of modern commercial and financial life have created many situations in which special experience and training are necessary to the formation of a valuable judgment. In this case if the one party has special experience or training or purports to have them, the other, if without them, is entitled to rely upon the honesty of the former's opinion and to attach to it the importance that is warranted by his superior competence."

by morning.". *Id.* 132 P. at 356. In reliance thereon she signed a release. In commenting on the Plaintiff's allegations we stated: "[a]n examination of the allegations of plaintiff's reply shows a sufficient charge of fraud". *Id.* 132 P. at 357. The defendant argued that "the statements of the physician were but the expression of an opinion as to the probable duration of the injuries". *Id.* We disagreed and said:

"The gist of fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished the means of accomplishing it are immaterial. 20 Cyc. 14.

In this case the physician had superior knowledge of the subject-matter under discussion. The plaintiff, as shown by the evidence, was an ignorant woman and did not have such knowledge; therefore his expression of an opinion which he did not entertain, because it was contrary to the facts, was such a misrepresentation as would warrant the cancellation of the release secured by reason thereof." *Id.* 132 P. at 357.

▪ In *St. Louis, supra,* the physician expressed "an opinion he did not entertain" to the plaintiff. In our case, Hall tendered to the trial court a portion of a deposition of Jackson showing that Jackson was of the opinion that some of the Edge Energies' partnerships were bad investments prior to his commendation of the partnerships to Hall. In *St. Louis, supra,* the physician had superior knowledge of the subject-matter. In our case Jackson was represented to Hall as having superior knowledge of the financial worth of Edge Energies' partnerships due to his status as the accountant for the partnerships. Thus,

Jackson's opinion as an accountant might be found to "become in effect an assertion summarizing his knowledge". *Prosser and Keeton on the Law of Torts, supra.*

Jackson's representations used the term "good". A representation containing the term "good" is insufficient, in certain circumstances, to show actionable fraud. *Poley v. Bender,* 87 Ariz. 35, 347 P.2d 696, 699 (1959). *Else v. Freeman,* 72 Kan. 666, 83 P. 409 (1905). The Kansas court explained that "the meaning of the word 'good' depends almost entirely upon its associations with other words, and relation to the subject-matter about which it is used". *Id.* 83 P. at 410. In applying this rule the court found that the expression "good fence" conveyed an idea too vague and uncertain to be an actionable representation. However, a Vermont court found that a seller's representation that a stock was "as good as gold", in connection with other statements, to be "an emphatic assertion that the corporation had assets enough to make its stock worth dollar for dollar or better". *Commercial Finance Corp. v. Gale,* 105 Vt. 3, 162 A. 899, 902 (1932).

▪ In today's case Hall alleged that Jackson stated that the partnerships were a "good deal", that they were "good moneymakers", and "they were expecting something like a two-year payoff". The phrase "expecting [4] something like a two-year payoff" is significant. This phrase quantifies the terms "good deal" and "good moneymakers" and thus, may be found to be a representation of the quality of the investment. A representation of the quality of property bought unseen may be the basis for fraud inducing a contract for sale. *Finefrock v. Carney,* 263 P.2d 744 (Okl. 1953).

---

**4.** Generally, a false representation must be regarding existing facts and not to future events. *Citation Co. Realtors, Inc. v. Lyon,* 610 P.2d 788, 790 (Okl.1980). An exception to this general rule is thus: "Such prophecy does, however, always carry an implied representation that the speaker knows of no facts which will prevent it from being accomplished; and as in the case of any other opinion, it has been held that there may be reasonable reliance upon the assertion where the speaker purports to have special knowledge of facts which would justify the ex-

pectations he is raising." W. Keeton, and W. Prosser, *Prosser and Keeton on the Law of Torts,* § 109 at 762 (5th ed 1984). (Footnotes omitted). One court has stated: "The fact that statements relate to the future will not preclude liability for fraud if such statements were intended and accepted as representations of fact and involved a matter peculiarly within the speaker's knowledge." *Claus v. Farmers & Stockgrowers State Bank,* 51 Wyo. 45, 63 P.2d 781, 789 (1936). *See also, Day v. Avery, supra.*

Jackson responded to this argument on summary judgment by arguing that Edge drilling ventures were good "because at the time the statement was made the drilling ventures of Edge Energies were often profitable". (O.R. at 294). Jackson's argument is that his opinion concerned all of the Edge partnerships generally and not the specific partnerships invested in by Hall. Hall responded that he understood Jackson to be making a representation that each and all of the limited partnerships would have a two-year payback. These issues are properly left for resolution by a jury.

In *Tice v. Tice,* 672 P.2d 1168 (Okl.1983), we stated that "[w]hen fraud is properly alleged by one party and denied by the other party, the existence or non-existence of fraud becomes a question of fact". *Id.* at 1171. In *White v. Wynn,* 708 P.2d 1126 (Okl.1985), we observed that where facts concerning any issue raised by the pleadings and supporting materials are such that reasonable men, in the exercise of fair and impartial judgment, might reach different conclusions, summary judgment must be denied. Hall was not required to prove his case when challenged by Jackson's motion for summary judgment. Hall satisfactorily alleged fraud and showed factual issues in response to Jackson's motion. Thus, we must reverse the trial court's order granting summary judgment to Jackson and vacate the Court of Appeals opinion affirming that order.[5]

## III. AWARD OF ATTORNEY'S FEES

▮ Attorney fees are not ordinarily recoverable by one party against another in the absence of a statute or an enforceable contract. *City National Bank and Trust Co. v. Owens,* 565 P.2d 4 (Okl.1977); *Matter of Estate of Katschor,* 637 P.2d 855 (Okl.1981); *Oklahoma Publishing Co. v. Miskovsky,* 654 P.2d 596 (Okl.1982). However, exceptions do exist to the general principle that each party should bear the expenses of his own legal representation. For example, in *Owens, supra,* we found that the court had inherent equitable power to award attorney fees when an opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.* 565 P.2d at 8.

▮ Jackson relied on the *Owens* bad faith exception in seeking an attorney's fee. He based this claim on the amount of papers filed by Hall *pro se* and on an argument that Hall's action was frivolous. The trial court's order awarding judgment for fees makes no such finding. Nor do we conclude that the trial of the cause to this point gives rise to the *Owens* bad faith exception.

In *Owens,* we emphasized the oppressive nature of that plaintiff's actions.

Clearly, under the facts, plaintiff's actions were oppressive—plaintiff dragged the defendants into court, put them to the expense of trial, without the chance of having suit determined in their favor, caused fruitless expenditures of time, effort, and money by all involved while plaintiff, at the same time, had the opportunity to test the strength and weakness of his case. In short, plaintiff used the courtroom as a rehearsal hall at the expense of his adversaries and the people. *Owens, supra,* at 7.

In contrast to *Owens,* Hall's case was decided on summary judgment. Jackson has not been put to the expense of a trial and at this time the judgment resolving the case in his favor must be set aside. There is no finding that Hall has acted in such bad faith as to bring this case within the limited exception to the general rule enunciated in *Owens,* supra. The trial court's order awarding attorney fees to Jackson is thus reversed.

In summary, the Court of Appeals opinion is vacated. The trial court's order dismissing Suzanne Hall as a party for her failure to appear stands unreviewed due to her failure to timely appeal. The trial court's order granting summary judgment to Jackson is reversed, as is the trial court order granting Jackson an attorney's fee. The order of the trial court denying Hall's

---

5. The trial court's denial of Hall's motion for summary judgment is not before us on certiora- ri and that portion of the trial court order is left intact.

motion for summary judgment is left intact. The case is remanded to the trial court for further proceedings.

HARGRAVE, C.J., OPALA, V.C.J., and HODGES, LAVENDER, DOOLIN, ALMA WILSON and KAUGER, JJ., concur.

SIMMS, J., concurs in part, dissents in part.

SIMMS, Justice, concurring in part, dissenting in part:

I would have granted certiorari in this matter only for the limited purpose of examining the attorney's fee award to defendant Jackson.

I concur with the majority's reversal of the attorney's fee award for the reason that by statute a defendant who transfers a case out of small claims court, as Jackson did in the instant case, is unable to recover attorney's fees. Under 12 O.S.1981, § 1757, such a defendant is subject to payment of plaintiff's attorney's fees if plaintiff prevails, but is not afforded a reciprocal right should he prevail. In *Thayer v. Phillips Petroleum Co.*, Okl., 613 P.2d 1041 (1980), this Court reviewed that statutory differentiation of treatment and held that no constitutional repugnancy results. That statute controls here.