**John H. ECKERT and Linda D. Eckert, Husband and Wife, Appellees,**

v.

**FLAIR AGENCY, INC., an Oklahoma corporation, and Don Garrigan, Appellants,**

**Robert F. Autry and Brenda N. Autry, Husband and Wife; Kretchmar Brands, Inc., a Missouri corporation; and Ruth Garrigan, Defendants.**

**No. 82895.**

Court of Appeals of Oklahoma, Division No. 1.

Dec. 12, 1995.

Hugh A. Baysinger, Haven Tobias, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, for Appellants.

Edward L. Ray, Phyllis H. Garcia, Edward L. Ray, Inc., Robert D. McCutcheon, Kieran D. Maye, Jr., Hastie & Steinhorn, Oklahoma City, for Appellees.

## MEMORANDUM OPINION

JOPLIN, Judge:

Appellants seek review of judgment on jury verdict for Appellees John H. and Linda D. Eckert (the Eckerts) and against Appellants Flair Agency, Inc., and Flair's agent, Don Garrigan, in the Eckerts' action for negligence and fraud against Flair, Garrigan and his wife Ruth, Robert F. and Brenda N. Autry—the record owners of the property—and Mr. Autry's employer, Kretchmar Brands, Inc.—the equitable owner of the property. We find insufficient evidence adduced by Appellees to support the jury verdict based on fraud and awarding actual and punitive damages against Flair and Don Garrigan, and reverse the trial court's judgment.

The Autry's owned and resided in a house in Edmond situated on a small, down-sloped acreage backed by a creek and with the first floor built partly below ground level. Mrs. Autry, a realtor, listed the house for sale in 1986, which listing was subsequently transferred to another realtor in the same agency. Upon the property's failure to sell, Mr. Autry's employer took over the house and listed it for sale through Appellants Flair and Garrigan. In March 1987, Garrigan discovered water on the first floor of the house. The record suggests Garrigan contacted the company which carried the home insurance, and an adjuster therefrom inspected the property. Garrigan also contacted Kretchmar which authorized repairs through a local contracting firm, including installation of "french drains" to improve drainage and a two year warranty on the work.

At the same time, the Eckerts first viewed the house. The Eckerts noticed the house was uninhabited, and carpet was pulled out of the house and drying outside. Thereafter, repairs were completed and a house-sitter moved in with instructions to monitor the "water" situation. Shortly after the installation of the new drainage system, the house-sitter noticed a very small amount of water in the bottom of one vent on the partially underground first floor. The contractor was notified and "adjusted" the system. The house-sitter found no other water in the house during the following five months in which he lived there.

The Eckerts viewed the house again in the summer of 1987 and in the early fall. On one of these occasions, Garrigan informed the Eckerts of the March 1987 incident, offered his explanation of the cause thereof, and advised the Eckerts of and directed them to the newly installed "french drain" system. The Eckerts subsequently signed a purchase contract for the house in September 1987. Prior to closing, the Eckerts were afforded an opportunity to—and did—conduct an inspection, which specifically included a plumbing inspection; however, the Eckerts never spoke with the inspector either before or after the inspection. The Eckerts closed the sale the following month, executing certain disclaimers (by which the realtors disclaimed warranties of "present or future value, size by square footage, condition, structure, or structure systems of the Property or any building, nor do they hold themselves out to be experts in quality, design and construction"), waivers (by which the Eckerts unconditionally acknowledged "either inspect[ion] [of] the [house] in accordance with the Contract or by *acceptance* of the Deed to the [house] ... *accepting* [the house] in its present condition"), and indemnifications, and accepting a warranty deed from the Autrys. (Emphasis added).

Some two years after closing, the Eckerts discovered a small area of wet carpet in the partially underground first floor of the house but sustained no damage of any significance and did not report the event to the contractor which installed the "french drain" system, although the system was still under warranty. In March 1990, three years after the March 1987 incident, the Eckerts experi-

enced a severe flooding problem on the partially underground first floor, necessitating major repair work.

The Eckerts then commenced the present action against the Autrys as record owners, Kretchmar as equitable owner, Don and Ruth Garrigan as agents of the seller, and Flair as the realty company listing the house, claiming negligence and fraud. The trial court dismissed the action against Ruth Garrigan and granted summary judgment in favor of the Autrys; Kretchmar filed for bankruptcy protection. The trial court denied Flair's and Garrigan's motions for directed verdict and, upon submission to the jury, entered judgment on jury verdict for both actual and punitive damages against Flair and Garrigan based on fraud. Flair and Garrigan appeal.

■ In order to establish actionable fraud, the plaintiff must prove (1) a false (2) material misrepresentation (3) made with *knowledge* that it is false, or made as a positive assertion *without knowledge* of whether it is true or false and (4) made with the *intent* to induce action in another (5) which does in fact induce such action, and (6) proximately causes injury or damage to another. *D & H Co. v. Shultz*, 579 P.2d 821, 824 (Okla.1978). Stated otherwise, the statement must either be *known* to be false, or the speaker must make a positive assertion on a subject about which he or she knows *little or nothing.* 76 O.S.1991 § 3(2) deceit includes an assertion as a fact of that which is not true, by one who has *no reasonable ground* for believing it to be true. *See also, Dawson v. Tindell,* 733 P.2d 407, 408 (Okla. 1987);. Fraud may *not* be predicated on a mere expression of opinion. *Hall v. Edge,* 782 P.2d 122, 126 (Okla.1989).

In the present case, the Eckerts point to three statements allegedly made by Garrigan as fraudulent: First, that the water Garrigan discovered in March 1987 constituted a one-time occurrence; second, that the water in the house was the result of a newly installed gas line ditch running from the top of the property down to the house; and third, that

remedial measures had been taken to assure the problem would not re-occur.

■ As to the first "one-time-occurrence" statement, the Eckerts asserted that statement was false, and arguably adduced evidence at trial suggesting other water problems prior to their purchase of the property to show falsity of Garrigan's characterization of the March 1987 water in the house as an isolated occurrence.[1] The dissent characterizes the "one-time-occurrence" statement as "clearly false." However, the record contains no direct evidence that Garrigan was aware of anything other than a remedied surface water problem when the Eckerts bought the property, and Garrigan reported the March 1987 incident and remedial efforts to the Eckerts. Moreover, the record reflects that Garrigan took special efforts to show the Eckerts the newly installed french drain system, and assisted the Eckerts in inspecting same.

Additionally, the record reflects the trial court granted summary judgment in favor of the Autrys, finding as a matter of law, the record:

> barren of evidence that would tend to indicate [the Autrys] had notice of the alleged flooding defect. Although the evidence does tend to indicate that the Autrys on one occasion experienced water problems, puddling in the front yard and some water in the lower level of the home, there has been no evidence that would tend to establish that the cause of the Autrys' experience is the cause of the Eckerts' alleged flooding problems.

We agree with the trial court: After reviewing the record in its entirety, we find no competent—much less clear and convincing—evidence either that Garrigan was aware prior to the Eckerts' purchase of the home of any previous non-surface water problems experienced by the Autrys or that the Autrys knew of and communicated to Garrigan that the property had a defect pertaining to water. In that regard, the record reflects that knowledge, if any, Garrigan

---

1. For example, the trial court allowed, inter alia, the testimony of a neighbor that the Autrys did, in fact, have flooding problems, notwithstanding the neighbor's testimony that he had not spoken with Garrigan.

*may* have had of a previous flooding problem during the time period the Autrys owned the property was gained well after the fact of the flooding experienced by the Eckerts. And, as the trial court aptly observed, the record was barren of any evidence that the Autrys knew of a "flooding defect," much less that the Autrys communicated that information to Garrigan. To the contrary, the record reflects that Mrs. Autry, as the initial realtor, indicated on the listing agreement for the property no water or flooding problems, as did her colleague who was the second realtor to list the property. Based on this evidence, Garrigan's statement that the water problem he observed in March of 1987 was a one-time occurrence cannot constitute a fraudulent statement or misrepresentation—nor one upon which the Eckerts were entitled to rely. On the record tendered for our review, we therefore find no competent evidence to support a finding that Garrigan was aware of a "flooding defect" and/or non-surface water problems in the property prior to its sale to the Eckerts as to constitute an actionable misrepresentation.

The second statement at issue arises from the Eckerts' testimony that Garrigan positively asserted that the incident observed by the Eckerts in March 1987 was caused by the installation of a gas line from the top or front of the property down to the house. In that regard, an essential element of actionable fraud is the knowledge of the falsity of the statement made or negligence in making the statement without a *reasonable* ground for believing it to be true. *Dawson v. Tindell,* 733 P.2d 407, 408 (Okla.1987).

■ In the present case, Garrigan's uncontroverted testimony showed that at the time he discovered water in the house in the spring of 1987, Garrigan could deduce no change in the property *other than* the installation of the gas line, and the record suggests the insurance adjuster in March 1987 attributed that incident to a surface water problem. It is also uncontroverted that Garrigan could not have ascertained a water table/insufficient foundation problem with the house absent having either the ability to see through the walls of the house or being trained in hydrology. In that regard, we also note the Eckerts' expert—a hydrologist—while opining the Eckert's flood was caused by underground water and an insufficient foundation, agreed that surface water could have contributed to the problem. Moreover, Garrigan was assured by the contractor which installed the "french drains" that the problem had been alleviated.

Accordingly, we find Garrigan's statement attributing the one-time discovery of water in the house to installation of the gas line was not unreasonable and, thus, cannot, as a matter of law, support a finding of actionable misrepresentation—contrary to the dissent's characterization of this statement as "textbook fraud." To hold otherwise would be to impose strict liability on a realtor for any latent defect and, at the same time, allow a buyer to avoid any responsibility for failure to inspect an apparent defect of which the buyer had actual knowledge. In this regard, the theory of the "blind" buyer has long been discredited in this jurisdiction:

Where the means of knowledge are at hand and equally available to both parties, and the subject of the purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he had been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made of attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness and been misled by overconfidence in the statements of another.

*See, e.g., Onstott v. Osborne,* 417 P.2d 291, 293 (Okla.1966) As the Oklahoma Supreme Court elsewhere aptly noted in a case similar to the one at bar:

It is a matter of common knowledge that water will flow down hill and that if water flows toward a building it will flow and accumulate thereunder if the lower portion of the vents in the foundation are at or below the level of soil surrounding the foundation and vents.

*Gutelius v. Sisemore,* 365 P.2d 732 (Okla. 1961).

In that regard, fraud related to the purchase of real property may not be predicated on an alleged false statement when the truth of such statement could have been ascertained with reasonable diligence by the buyer. *Dawson*, 733 P.2d at 409. It is uncontroverted that Garrigan advised the Eckerts of water in the house in March 1987, that Garrigan showed the newly-installed drain system to the Eckerts and gave the Eckerts ample opportunity to inspect, or have inspected, the system (which they did), the property itself (which they did), and/or to inquire of the house-sitter regarding any water problems. However, the Eckerts failed to avail themselves of any opportunity after observing the water damage to ascertain the possible source of the water problem, *if any*. The Eckerts may not therefore claim they had been deceived by Garrigan's alleged misrepresentation. *Dawson*, 733 P.2d at 409 (citation omitted).[2]

Finally, the Eckerts maintain Garrigan assured them there would be no water problem in the future. However, fraud may not be predicated upon a representation or assurance:

> which in the nature of things [is] impossible of performance and in regard to which no one having the capacity to contract at all could be deceived, or where from the nature of the representation it is incredible that the person to whom it was made could have been deceived.

*Onstott v. Osborne*, 417 P.2d 291, 294 (Okla. 1966). Stated otherwise, such a statement must be considered as "an expression of the seller's opinion only, which is to be discounted as such by the buyer, and on which no reasonable man would rely." *Hall v. Edge*, 782 P.2d 122 (Okla.1989), citing *Prosser and Keeton on the Law of Torts*, § 109 at 757 (5th ed. 1984). We find Garrigan's alleged assurance or representation that the property would never flood in the future constitutes such an indefinite and extravagant statement upon which reasonable persons such as the Eckerts are not entitled to rely for the purpose of establishing actionable fraud. Fraud must be proved by clear and convincing evidence, *Steiger v. Commerce Acceptance of Oklahoma City, Inc.*, 455 P.2d 81 (Okla.1969), and a jury verdict thereon must be reasonably supported by *competent* evidence. *Walker v. St. Louis–San Francisco Ry. Co.*, 646 P.2d 593 (Okla.1982).

In the present case, the Eckerts' evidence showed the water problems attributable to the local water table and/or foundation of the home, and that Garrigan had no information indicative of anything other than a reasonable belief of a remedied surface water disposal problem. We therefore find the remaining evidence, even viewed in the light most favorable to the Eckerts, does not support the jury verdict finding Garrigan guilty of actionable fraud or misrepresentation. Accordingly, we hold the trial court erred in failing to direct a verdict in favor of Flair and Garrigan. We therefore reverse the judgment against Appellants Flair and Garrigan. Having so held, we need not reach the issue raised on the Eckerts' counter-appeal regarding imposition of the "cap" on punitive damages under 23 O.S. § 9.

The judgment on jury verdict against Appellants Flair and Garrigan is therefore REVERSED.

CARL B. JONES, P.J., dissents with separate opinion.

GARRETT, C.J., concurs.

CARL B. JONES, Presiding Judge, dissenting:

I dissent.

The Court's opinion states that Don Garrigan could deduce no change in the property in the spring of 1987 other than the gas company's recent work to install a new gas line to the house then listed for sale through

---

**2.** We note Mr. Justice Opala's concurring opinion in *Dawson* that the facts in that case did not impose upon the realtor an affirmative duty to independently inspect the premises for flaws in order to inform the purchaser of "all reasonably discoverable defects" in the property. 733 P.2d at 409. In that regard, we note in the present case Garrigan, as the realtor, discovered an apparent problem, contacted the owner, and relied upon the contractor hired to repair the problem. Thereafter, Garrigan specifically informed the Eckerts of the problem and the steps taken to rectify the situation, directing and encouraging the Eckerts to inspect same.

Flair Agency, Inc. The Court also acknowledges the uncontroverted evidence that Garrigan had no way of knowing whether the water intrusion previously discovered in the house had been caused by a problem with the foundation unless there was some excavation of the soil around the foundation, or exploration of the sheetrock on the interior of the affected lower level of the house.

Yet, according to the evidence accepted by the jury, Garrigan proceeded to tell the Eckerts that the water found in the house in 1987 came to be there *because* the gas company had dug a trench to install the new gas line, and he even went so far as to offer an explanation of how the water came down the trench and then entered the lower floor of the house. He did not pass this explanation along from some other ostensibly authoritative source; *he offered it as an original, affirmative statement of fact.* Clearly, the statement was false; the statement was material; and Garrigan intended the Eckerts to rely upon it. They did in fact rely upon Garrigan's statement (and his assurance that the French drain work had corrected this "one-time" problem), to their eventual detriment. *This is the textbook definition of fraud.* 76 O.S.1991 § 3(2); *see Dawson v. Tindell,* 733 P.2d 407, 408 (Okla.1987).

The Court seeks to justify reversal by saying that Garrigan's statements were "not unreasonable," apparently because he had no reason to suspect that he was not speaking the truth. In my view, under the circumstances of this case, the Court has turned the law of fraud on its head. Garrigan's explanation and assurance communicated to the Eckerts were fraudulent precisely *because* he had no reason to know whether what he was saying was true or false, but nonetheless tried to explain (and so dismiss) the previous water problem.

In an action at law tried to a jury, the appellate court on review must accept the jury's determination of disputed fact issues. The jury's verdict is conclusive as to all disputed facts and all conflicting statements, including the credibility of witnesses and the effect and weight to be given to conflicting or inconsistent expert testimony. *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.,* 841 P.2d 568, 570 and n. 5 (Okla.1992). These are not matters to be retried by appellate courts when there is evidence in the record to support the verdict. *Holley v. Shepard,* 744 P.2d 945, 947 (Okla.1987) (holding that Court of Appeals, by redetermining credibility of witnesses and assuming facts not supported by the evidence had so far departed from the proper standard of review as to call for the exercise of the Supreme Court's supervisory power on certiorari).

I would affirm the judgment below on liability of Garrigan and the vicarious liability of Flair Agency, Inc., and on actual damages.[1]

---

1. Beyond challenging the sufficiency of the evidence, Appellants argue that the evidence of damages was unduly speculative and the trial court improperly allowed recovery of damages for emotional distress, and complain about the conduct of opposing counsel during examination of witnesses and closing argument. I would reject each of these grounds for reversal. I would, however, agree with Appellants that the matter of punitive damages should not have been submitted to the jury, because, though his acts were fraudulent, there is no evidence that Garrigan's acts were either actuated or accompanied by an evil intent, or were the result of such gross negligence or disregard of Appellees' rights as may be deemed the equivalent to such intent. See *Hamilton v. Amwar Petroleum Co.,* 769 P.2d 146, 149 (Okla.1989). I would therefore reverse only so much of the judgment as related to the award of punitive damages.