[Civil No. 3601.   Filed January 6, 1936.]

[53 Pac. (2d) 64.]

# T. E. LAW, Appellant, v. ELIZABETH SIDNEY, Appellee.

Messrs. Beer, Walsh & Wilmer, and Mr. T. A. Carson, for Appellant.

Mr. E. H. Karz and Mr. William C. Fields, for Appellee.

LOCKWOOD, C. J.—Elizabeth Sidney, hereinafter called plaintiff, brought this action against T. E. Law, hereinafter called defendant, seeking damages in the sum of $2,977.80. The case was tried to a jury, which returned a verdict for plaintiff for the full amount prayed for, and from the judgment rendered on the verdict and the order overruling the usual motion for new trial this appeal has been taken. There were other parties defendant, but a verdict in their favor was instructed by the court, and as plaintiff has not appealed from the judgment rendered thereon, we need not consider them.

There are nine assignments of error based upon five propositions of law. The first question for our consideration raised by these propositions is whether or not the evidence sustains the verdict. The action is based upon the theory that defendant obtained from plaintiff the sum of $2,977.80 by means of certain false and fraudulent representations. This court, in the case of *Moore* v. *Meyers,* 31 Ariz. 347,

4

253 Pac. 626, 628, stated the elements of actionable fraud as follows:

"(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury. 26 C. J. 1062. If these factors all appear, a cause of action for fraud will unquestionably exist."

■ We first consider the character of the representations on which an action of this nature may be based. The general rule is that in order to constitute actionable fraud, the false representation must be of a matter or fact which exists in the present, or has existed in the past and cannot be predicated upon the mere expression of an opinion or upon representations in regard to matters of estimate or judgment. The person to whom statements of the character last mentioned are made has no right to rely upon them and does so at his peril, nor can they be supposed to influence his judgment. For instance, mere general commendations of property which it is sought to sell, usually known as "seller's statements" or "puffing," do not amount to actionable misrepresentations. This rule is based upon the fact that it is universally recognized a seller is apt to recommend an article or thing offered for sale in more or less extravagant language. The law does not hold him to a strict accountability for such commendation of his wares as are manifestly open to difference of opinion.

■■ While a statement of a matter to occur in the future, if affirmed as a fact, may amount to a false or fraudulent representation, it must be an actual assertion of a *fact* and not merely an agreement to do something in the future. It is the general rule

that statements or representations as to the future value or profitableness or prospects of a business are mere expressions of opinion, and a representation that something will be done in the future or a promise to do it is at most a contract and not a fraudulent representation such as will sustain an action of this nature. There is one exception to this last-named rule, and that is where the promise to perform a future act was made with a present intention on the part of the promisor that he would not perform it. In such a case the promise is a basis for an action of fraud.

With these rules for testing the nature of the representations upon which an action like this can be based, we examine the complaint to see what it alleges. It is quite lengthy and it would serve no useful purpose to set it forth in full. We, therefore, give only so much of its substance as will enable us to determine what, if any, allegations of false representations it contains which if proved, would sustain the action. It sets up that defendant was engaged in the manufacture of a certain insecticide; that he desired to secure additional capital for the purpose of increasing his business, and in order to induce plaintiff to invest such capital made many false representations to her. We set forth those which we think are material in two classes, the first consisting of representations of material present facts, and the second of material promises for the future. In the first class we find the following: (1) That defendant was the exclusive owner and possessor of a secret formula for the manufacture of insecticide; (2) that the insecticide so manufactured was fatal and death dealing to all varieties of insects and vermin coming in contact therewith; (3) that this product was already being handled in the open market by a large number of stores in Arizona and Texas; and (4) that such busi-

ness was profitable. These are the only material representations of present existing facts. In the second class of promises to perform future acts were the following: (1) That defendant would cause a corporation to be formed for the purpose of exploiting the insecticide, and would give plaintiff an interest therein proportionate to her investment; (2) that he would place the secret formula in the custody of the Valley Bank at Phoenix, Arizona, before she invested any money; (3) that he would at the same time place a bond there in the sum of $3,000 for the protection of plaintiff, conditioned to indemnify her against any loss that she might sustain on account of her investment; (4) that he would furnish the corporation the finished product at as nearly cost as possible. There are many other promises and statements alleged in the complaint, but we think they are all either immaterial or fall within the class of mere statements of opinion which are not actionable.

■■ It was, of course, incumbent upon plaintiff to establish by clear and convincing evidence the fact that defendant had made these representations or some of them; that they were false as to matters of existing fact, and as to the future promises; that at the time they were made defendant did not intend to perform them; and that relying on them, she invested her money. In determining whether she has successfully met the burden placed upon her, it is necessary that we examine the transcript of the evidence and see whether it, construed as strongly as is reasonably possible in support of these allegations, will sustain them. So far as the making of the representations is concerned they rest entirely upon the testimony of plaintiff, corroborated to some extent by that of one Arthur F. Merritt.

■ Considering first the representation that the formula was a secret one, known only to defendant, the undisputed testimony is that the formula was composed of certain ingredients which defendant had learned of by reading of a newspaper, together with one additional ingredient which he had added thereto and which he declined to reveal, and concerning the nature of which there was no testimony. We are of the opinion that assuming that he did represent to plaintiff that the formula was a secret one, a matter which the evidence leaves somewhat in doubt, there is no evidence that all of its ingredients were known to anyone other than defendant, although it is possible that a chemist, by careful analysis, might have discovered of what it consisted. But this is true of almost any chemical compound. We think plaintiff failed to show the falsity of the representation that the formula was a secret one.

■ There was considerable testimony as to whether the insecticide was effective. Three witnesses testified that it was not effective with them; about fifteen who had used it for from one to three years testified positively and emphatically that it had always worked when they used it according to directions. We think the evidence was insufficient to show that the insecticide, when used properly, was not an effective one. Nor did the plaintiff prove that the insecticide had not been distributed substantially as defendant claimed or that there had not been an actual profit in the business so far as he had already carried it on. There were no false representations of existing facts proved.

■ We come then to the promises of future action, which it is alleged defendant made in order to induce plaintiff to invest her money. So far as the formation of the corporation and the giving of plaintiff

an interest therein is concerned, it appears affirmatively in the record that the corporation was formed, and that plaintiff was elected treasurer and a director thereof and served as such for some time. It is true that no stock certificates were ever formally issued to her, but she never requested them, and there can be no doubt that on all of the facts she could compel their issuance at any time she desired. We are of the opinion that it appears that defendant did comply sufficiently with his first promise so that no action would lie upon it.

██ The second promise was that he would place the secret formula of the insecticide in the custody of the Valley Bank at Phoenix, Arizona, before plaintiff invested her money. The record also shows by the evidence of disinterested witnesses that he did attempt to place the formula with the Valley Bank, but that it declined to receive it. It also appears that a similar attempt was made to deposit it with the branch of the Valley Bank & Trust Company at Mesa, but that it also refused to accept the deposit. In view of these circumstances, we think it appears affirmatively and conclusively that defendant made every reasonable effort to comply with his promise and was prevented from doing so by circumstances beyond his control. Such being the case, there is no evidence to sustain an allegation that he did not intend to comply with his promise at the time he made it.

The fourth promise was that he would manufacture and furnish to the corporation the insecticide at as nearly cost as possible. The evidence shows affirmatively that he did furnish all and more than the corporation could dispose of, and there is no suggestion that he charged more for it than approximately the cost of manufacture.

We come then to the third promise, and the one upon which it is evident plaintiff relied the most strongly both at the time that she agreed to contribute her money and during the trial. It was that defendant would place a bond in the Valley Bank in the sum of $3,000, guaranteeing to plaintiff that she would sustain no loss on account of her investment. So far as the original promise is concerned, according to the testimony of plaintiff, it was made some time in March or April, 1933, at the residence of one Adam Abet, in Phoenix. Her testimony in regard to it is as follows:

"Q. Now with reference to your investment, what did he tell you in so far as the sureness of your money? A. Well, he was to give a bond for the insurance of my money. . . .

"Q. Now with reference to the bond that he was going to give you, Mrs. Sidney, what did he say to that? A. Well, he didn't say much about that. He was to give it. I thought I would get that because I took his word for it.

"Q. Did he promise you to give you a bond to secure your money? A. Yes. . . .

"Q. Were you at that time ready to put up your money? A. Well, no, I was not, to be sure. I wanted to be sure that my money was secured. He told me that if I put in the money that he would put up a three thousand dollar bond and guarantee my money back in six months."

Merritt corroborated her testimony by saying that defendant told plaintiff at the time and place aforesaid, "to make it better than that, I will deposit a three thousand dollar bond in the Valley Bank to guarantee you that you will make your money back in six months," and Mrs. Sidney said, "Mr. Law, if you will do that I will buy under conditions, banking conditions." No bond guaranteeing that plaintiff would get her money back was ever put up by defend-

ant, nor did he ever at any time tell plaintiff or any other person that it had been, and plaintiff made no effort before she advanced her money to determine whether it had been. She immediately began advancing money for the purposes of the corporation until she had put up $2,977.80, this money being deposited by mutual consent in the Phoenix National Bank. All except a little over $800 was thereafter withdrawn from time to time and used for the purpose of the corporation on checks of plaintiff alone or upon checks jointly signed by herself and defendant. The $800 was drawn by defendant on checks signed by himself alone while plaintiff was in the east. The only evidence of how this last $800 was used was defendant's testimony that it was for the purpose of paying bills incurred in the manufacture of the insecticide. We think the evidence sufficiently sustains the conclusion that defendant did promise to put up a $3,000 bond guaranteeing that plaintiff would get her money back, and that such a bond was never posted. But did he intend at the time he made such representations that he would not post the bond, and did plaintiff invest her money on the strength of his representation that it would be so deposited? There is no direct testimony to show what defendant's intentions on the subject were and we must, therefore, gather them from the surrounding circumstances. In view of the fact that he made no effort, so far as the record shows, to prepare or furnish a bond of the type described by plaintiff in her testimony, we think it was not an unreasonable inference for the jury to draw that he never intended to do so. But did she have the right to rely on such promise to the extent of advancing her money without ascertaining if the bond had been deposited in the Valley Bank as agreed. The allegation of the complaint is that the bond was

to be put up *on or before* her investing the money, and her testimony is only susceptible of the same interpretation, to wit, that the execution and delivery of the bond was to precede the investment of the money. Where parties deal at arm's length and are on equal terms, one who has failed to avail himself of knowledge readily within his reach cannot claim the right to rely upon representations which he could have discovered to be false by the use of such knowledge. *Bianconi* v. *Smith*, 3 Ariz. 320, 28 Pac. 880; 26 C. J., p. 1150, and note. The evidence shows that plaintiff and defendant were strangers before they met and first discussed the question of investment, and there is no evidence that any fiduciary relation ever existed between them which would relieve plaintiff of the necessity of investigating the statements made by defendant to the same extent as any other reasonable person would be required to do. There is no claim that she was not a woman of mature years, fully competent to transact business independently. Such being the case, we are of the opinion that when the representation was made to her that before she invested her money a bond guaranteeing its return would be placed in a bank in the same city where she resided that, as a reasonable person, it was her duty before investing her money to see if such bond had been deposited according to agreement and if, without even inquiring at the bank to see whether it had been done, and in the absence of any representation by defendant that as a matter of fact it had been done, she proceeded to invest her money, she was not entitled to rely upon the representation of defendant that it would be done. We are of the opinion that the evidence does not reasonably sustain the verdict and judgment rendered thereon. We need not, therefore, discuss the remaining assignments of error.

The judgment is reversed, and case remanded for a new trial in conformity with the opinion expressed herein.

McALISTER and ROSS, JJ., concur.