Kate SPERLE, Plaintiff and Appellant,

v.

Joe B. WEIGEL and Elizabeth Weigel, Defendants and Respondents.

No. 8140.

Supreme Court of North Dakota.

Sept. 24, 1964.

Rausch & Chapman, Bismarck, for plaintiff and appellant.

Anderson & Wolf, Bismarck, for defendants and respondents.

ERICKSTAD, Judge.

The plaintiff, Kate Sperle, appeals from a judgment of the District Court of Burleigh County dismissing her complaint. She asks for a trial de novo.

In her complaint she sought either the rescission of a sale and the return of her purchase money or damages because of alleged fraudulent representations by the Weigels which induced her to buy a four-unit apartment building.

Miss Sperle, a spinster fifty-one years of age, had spent most of her life on a farm near Napoleon, North Dakota, caring for her brothers and sisters after the death of their mother. In recent years she had been employed in domestic service by an "old people's home" in the City of Bismarck. At the time of the law suit she was caring for an elderly woman in Bismarck. She has a fifth grade education. As German was the language customarily spoken in her home, she has difficulty reading, speaking, and understanding the English language. She had had no business experience and had very little knowledge of city ordinances.

Having heard that the Weigels wished to sell their apartment building in Bismarck, she telephoned to inquire and was invited by Mrs. Weigel to their home to talk about it. Accordingly, Miss Sperle went to the Weigels' house on November 11, 1962. The following is a portion of her testimony concerning what then transpired:

"Q. What did they say about the apartment?

"A. Well, they said it is—at first they said, 'We go over' and then they said, 'It's a four union' and I said, 'It is a little bit a lot money' and so

they said, 'It's in six years you pay it up'.

"Q. From what?

"A. From the rent, you know, six year you have it all paid up, we figured it out.

"Q. Who figured up the rent?

"A. Mrs. Joe Weigel, Mrs.

"Q. Did she tell you how much rent you can get a month?

"A. Yes, she did.

"Q. What did she say?

"A. Two hundred and ten dollars from four units.

"Q. Four units?

"A. For those four.

"Q. Units?

"A. Yes.

"Q. And then she told you that in six years with the rent you'd have it all paid for?

"A. All paid."

The Weigels were asking $12,000 for the building but agreed to sell it to Miss Sperle for $11,600, when she made this counter-offer. A Bismarck realtor testified that he examined the building on April 19, 1963, and that in his opinion it was worth only $6,600.

Concerning representations by the Weigels regarding the condition of the building, Miss Sperle testified as follows:

"Q. What did they say about the condition of the building before you bought it?

"A. That is real good, its four-unit to rent out.

"Q. You believed that?

"A. I believed it."

Although no contract was drawn or executed on that date, Miss Sperle left a check for $10, so that the Weigels would hold the place for her.

On December 13, 1962, the Weigels executed a deed conveying the premises to Miss Sperle. It was recorded in the office of the Register of Deeds for Burleigh County on December 17, 1962. A mortgage on the premises for $7,000 was executed on the date of the deed to secure the balance of the purchase price. The sum paid by Miss Sperle to the date of the law suit is $6,171, which is the amount of money she requests be returned to her in exchange for a deed to the premises.

On December 27, 1962, she received a complaint from one of the tenants about a leakage of gas, which, it developed, was from an unvented gas stove. This stove was disconnected by a representative of the gas company.

Shortly thereafter the City inspected the premises and on January 7, 1963, sent Miss Sperle the following letter:

"(Letterhead: City of Bismarck, North Dakota, Department of Health & Building Inspection)

"January 7, 1963

"Miss Kate Sperle
Apartment 12
200½ East Main Avenue
Bismarck, North Dakota

"Dear Miss Sperle:

"After receiving two complaints, a member of this Department made an inspection of the apartment house you own at 1517 Bowen Avenue.

"The following items were noted and need correcting.

"1. The wiring in the house is inadequate. There are no convenient outlets at all on the two upper floors. The tenants are using lamp cord which is in direct violation of the electrical code. Also the cords on the pendant

lights throughout the house are frayed and worn and need replacing. There is a broken light switch on the basement stairs with exposed live parts.

"2. The electrical service entrance is not large enough for the number of apartments.

"3. The unvented heater in the basement bedroom must be removed or replaced with an approved type heater.

"4. The copper tubing to the gas range in the main floor apartment must be replaced with approved piping.

"We suggest that you have a licensed master electrician renew the wiring and bring it up to the minimum standards of the code requirements.

"We also suggest that you have Montana-Dakota Utilities or some other heating contractor remove and replace the copper tubing and the unapproved heater from the house. This must be done immediately.

"A member of this Department will make an other inspection within 30 days of the date of this letter to determine if you have started to comply with the suggestions made and if not we will have to order the house vacated until you do comply.

"Thank you for your cooperation."

Following receipt of this letter, Miss Sperle discussed the matter with the Weigels. Estimates were obtained, indicating that the building could be rewired for $700. It was orally agreed that this cost should be shared equally and that Miss Sperle would pay for repairing the plumbing, which at that time involved only the repair of a constantly flowing toilet. Following this agreement, Miss Sperle issued her check for $1,371.

Shortly thereafter the plumbing developed more difficulties, which, it was estimated, could be repaired for $500. When the Weigels would not share in this cost, Miss Sperle stopped payment on her check for $1,371. This resulted in a telephone call from Mr. Weigel, telling her that if she didn't make the check good, he would cause trouble. Miss Sperle then reissued her check and again attempted to discuss the plumbing matter with the Weigels. When they refused to discuss it, she informed them that she would obtain a lawyer and sue them. This action is the result thereof.

In Schaff v. Kennelly, N.D., 61 N.W.2d 538, this court said:

"A party who elects to rescind a contract on the ground that he was fraudulently induced to enter into it has a further choice of procedures. He may bring an action in equity setting forth his election to rescind and ask the court to declare a termination of the contract; or he may bring an action at law based upon his election to rescind and his restoration, or offer to restore, as required by Section 9–0904 NDRC 1943. * * *"

Here the plaintiff asks an adjudication or decree rescinding the sale or, in the alternative, seeks damages. In her suit in equity she is governed by Section 32–04–21, N.D.C.C., providing for rescission by adjudication of the court of equity, rather than by Section 9–09–04, providing for rescission in law.

"32–04–21. When rescission of contract adjudged.—The rescission of a written contract may be adjudged on the application of the party aggrieved:

"1. In any of the cases mentioned in section 9–09–02;

"2. When the contract is unlawful for causes not apparent upon its face and when the parties were not equally in fault; or

"3. When the public interest will be prejudiced by permitting it to stand." North Dakota Century Code.

"9–09–02. Rescission—When permitted.—A party to a contract may rescind the same in the following cases only:

"1. If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party;

"2. If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part;

"3. If such consideration becomes entirely void from any cause;

"4. If such consideration before it is rendered to him fails in a material respect from any cause; or

"5. By consent of all of the other parties." North Dakota Century Code.

Our Legislature has defined actual and constructive fraud as follows:

"9–03–08. 'Actual fraud' defined.— Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

"1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

"2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true;

"3. The suppression of that which is true by one having knowledge or belief of the fact;

"4. A promise made without any intention of performing it; or

"5. Any other act fitted to deceive."

"9–03–09. 'Constructive fraud' defined.—Constructive fraud consists:

"1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him, by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

"2. In any such act or omission as the law specially declares to be fraudulent without respect to actual fraud." North Dakota Century Code.

As Miss Sperle contends that she was induced by fraudulent representations to purchase the apartment building and as fraud is a basis for rescission in equity under Subsection 1 of Section 9–09–02, N.D.C.C., we shall review the representations alleged to be fraudulent.

■ The first alleged misrepresentation is that the buyer would be able to pay the entire purchase price in six years from the rent. The second is that the four units would produce a monthly rental income of $210.

Although the premises may not be used as an apartment building until the repairs ordered by the City are made, there is nothing in the record to disclose that the building at the time of the sale was not producing a monthly rental income of $210.

There is no evidence to indicate that the premises could not have been paid for in six years had all the apartments been rented for the full period, nor is there any evidence showing that the apartments had not been regularly rented while owned by the

Weigels. The record is also devoid of anything indicating that the sellers had any reason to believe that the buyer would not be able to continue to rent all of the apartments.

■ Ordinarily, misrepresentations amounting to fraud which will avoid a contract must relate to past or present facts, and cannot consist of unfulfilled promises or predictions with respect to future events, especially where intent to deceive is absent. 17 C.J.S. Contracts § 157 (1963).

■ One of the essential elements of fraud is that there be a false representation of a material fact which either exists in the present or has existed in the past, and a mere expression of an opinion in the nature of a prophecy as to the happening or nonhappening of a future event is not actionable. Leece v. Griffin, 150 Colo. 132, 371 P.2d 264.

■ The statement that the building was a good, four-unit rental building is merely an expression of opinion. In discussing the effect of similar words, the Supreme Court of Arizona said:

"The key phrases in the representation relied upon are: "good domestic well", "sufficient water", and "proper operation of the pump and windmill". It is obvious that the indefinite adjectives "good", "sufficient", and "proper", are—at least in this context—too vague to be taken as anything other than reflections of the opinion of the speaker. See, Else v. Freeman, 72 Kan. 666, 83 P. 409. There is nothing in these words to indicate that the well would, as a matter of fact, make a certain number of gallons per day—be it 500 or 5,000. It is well settled that actionable fraud cannot be based upon an expression of opinion. Law v. Sidney, 47 Ariz. 1, 53 P.2d 64; Waddell v. White, supra [56 Ariz. 420, 108 P.2d 565]. There is certainly no clear and convincing evidence to show that—from *Poley's* point of view—this well was not

"good", "sufficient", and "proper". If the admitted representation involved no misstatement of actual facts, then there was no actionable fraud." Poley v. Bender, 87 Ariz. 35, 347 P.2d 696.

■ As we view the evidence, no representation was made as to the value of the premises. The sellers merely asked a certain price for the premises. The mere asking of a certain price for a piece of property is not a representation of its value. Boettcher v. Goethe, 165 Neb. 363, 85 N.W. 2d 884, citing 37 C.J.S. Fraud § 57 c; Nathan v. McKernan, 170 Neb. 1, 101 N.W.2d 756.

In the instant case the buyer argues that because of the great disparity in education, in ability to use the English language, in intelligence, and in business experience between the buyer and the sellers, and because the buyer and the sellers were in a confidential or fiduciary relationship, the representations were accepted as facts and not as opinions, so that the buyer relied completely thereon and was induced thereby to buy the premises, to her prejudice.

In this connection the record fails to disclose the extent of the education, the ability to use the English language, the intelligence, and the business experience of the sellers, and thus does not show a disparity. It also fails to support the contention that a fiduciary or confidential relationship existed. The only testimony in this regard was the buyer's testimony that she and Mrs. Weigel are cousins, that she has known Mrs. Weigel all her life, and that she believed her.

■ The mere fact that Mrs. Weigel and the buyer are cousins is insufficient in itself to create a fiduciary or confidential relationship. In this connection the Supreme Court of Illinois, in a 1950 decision, had this to say:

" * * * The law is well settled. A confidential or fiduciary relationship exists in all cases where trust and confidence are reposed in another who

thereby gains a resulting influence and superiority. Krieg v. Felgner, 400 Ill. 113, 79 N.E.2d 60; Brod v. Brod, 390 Ill. 312, 61 N.E.2d 675. The relationship may exist as a matter of law, as between attorney and client, guardian and ward, and principal and agent, or it may be moral, social, domestic, or even personal in its origin. Stone v. Stone, [407] Ill.Sup., [66] 94 N.E.2d 855; Kester v. Crilly, 405 Ill. 425, 91 N.E.2d 419. The initial burden of proof is on the party seeking relief to show the existence of a fiduciary relationship. Pfaff v. Petrie, 396 Ill. 44, 71 N.E.2d 345; Stewart v. Sunagel, 394 Ill. 209, 68 N.E.2d 268. Where the alleged relation does not exist as a matter of law, it must be proved by clear and convincing evidence. Galvin v. O'Neill, 393 Ill. 475, 66 N.E.2d 403; McGlaughlin v. Pickerel, 381 Ill. 574, 46 N.E.2d 368.

"The mere fact of family relation does not create a fiduciary relationship as a matter of law and the fiduciary relationship alleged must be proved by competent evidence. Stewart v. Sunagel, 394 Ill. 209, 68 N.E.2d 268; Kasbohm v. Miller, 366 Ill. 484, 9 N.E.2d 216." Apple v. Apple, 407 Ill. 464, 95 N.E.2d 334.

A decision rendered by the Supreme Court of Iowa in 1951 is to the same effect. Wagner v. Wagner, 242 Iowa 480, 45 N.W. 2d 508.

Although it is apparent that Miss Sperle purchased an old building in need of considerable repair, we do not find that the representations made by the sellers are fraudulent representations entitling the purchaser to rescind the sale and recover the money paid on the purchase price or to receive money damages.

For the reasons stated herein the judgment of the district court is affirmed.

MORRIS, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.