985 P.2d 556

Scott **ENYART, Jr., a minor and Scott Enyart, Sr., as Conservator of the Estate of Scott Enyart, Jr., a minor, Plaintiffs–Appellants,**

v.

**TRANSAMERICA INSURANCE COMPANY, Defendant–Appellee.**

No. 1 CA–CV 97–0030.

Court of Appeals of Arizona, Division 1, Department E.

Dec. 29, 1998.

Reconsideration Denied Feb. 26, 1999.

Review Denied Sept. 21, 1999.

72

Arnett & Arnett, P.C. by Wayne C. Arnett and Mark W. Arnett, Tempe, for Plaintiffs–Appellants.

Copple, Chamberlin & Boehm, P.C. by Scott E. Boehm and Robert S. Murphy, Phoenix, for Defendant–Appellee.

## OPINION

THOMPSON, Judge.

¶1 Scott Enyart, Jr. (Enyart) appeals from the trial court's grant of summary judgment on his claims arising out of Transamerica's failure to comply with terms of a settlement agreement. For the reasons that follow, we reverse the grant of summary judgment on Enyart's breach of contract and bad faith claims and affirm the grant of summary judgment on the remaining claims.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Enyart was injured by a trolley car at a United Way fund-raising event at Arizona State University in 1984. He entered into a settlement agreement with defendants Tempe Transit, Inc., United Way of Tempe, Arizona State University, and defendants' insurers, including United Way of Tempe's insurer Transamerica Insurance Company (Transamerica). The written settlement agreement provided that Enyart was to receive $375,000.00 as proceeds from an annuity to be placed with Executive Life Insurance Company of California (Executive Life), an A+ rated insurance company, in addition to $37,500.00 cash at the time of settlement.[1] The agreement specifically states:

> F. Said primary annuity payments are solely guaranteed through a backup annuity policy for the full amount of the annuity and for the benefit of the annuitant procured by and through Transamerica Insurance Company (which is an A+ class 15 insurer) in the unlikely event Executive Life Insurance Company of California (the primary annuity policy provider) becomes insolvent and unable to pay according to the terms of the annuity. This guarantee policy is in lieu of individual guarantees of payment by Tempe Transit, Inc., United Way of Tempe and their respective insurers, National Indemnity and Transamerica Insurance Company (except for its policy obligation in regard to the backup annuity policy) and Arizona State University, by and through the State of Arizona Risk Management Department. Any further obligation to pay according to the terms of above described annuity is strictly limited to said primary and guarantee policies as surety.

¶3 Transamerica never obtained a backup annuity policy, and in 1991, Executive Life became insolvent. Enyart filed this suit in superior court alleging Transamerica (and others not relevant to this appeal) breached the settlement agreement. Enyart made claims for specific performance, breach of contract, anticipatory breach, reformation, unjust enrichment, breach of the duty of good faith and fair dealing (bad faith), com-

---

1. The annuity payments were scheduled to be made as follows:

| | |
|---|---|
| $10,000.00 on January 31, 1993 | $40,000.00 on January 31, 2000 |
| $20,000.00 on January 31, 1996 | $80,000.00 on January 31, 2005 |
| | $100,000.00 on January 31, 2010 |
| | $125,000.00 on January 31, 2015 |

mon law fraud, consumer fraud, and unfair or deceptive acts or practices in the business of insurance (" § 443 liability"). In its answer, Transamerica admitted it breached the settlement agreement by failing to obtain a backup annuity policy, but claimed Enyart was not injured by the breach.

¶ 4 Transamerica filed a motion for partial summary judgment on Enyart's claims for bad faith, common law fraud, consumer fraud, and § 443 liability. During oral argument, Scott Boehm, counsel for Transamerica, admitted that Transamerica breached the settlement agreement. Judge Sticht granted summary judgment in favor of Enyart on the breach of contract claim, "on the issue of liability only." He granted summary judgment in favor of Transamerica on the claims for bad faith, consumer fraud, and § 443 liability. Judge Sticht denied Transamerica's motion for summary judgment on the fraud and punitive damages claims.

¶ 5 Subsequently, Transamerica filed a motion asking Judge Sticht to clarify his decision and to reconsider his decision granting summary judgment in favor of Enyart on the contract claim, and renewed its motion for summary judgment on the fraud and punitive damages claims. Judge Sticht clarified his earlier minute entry, denied the motion for reconsideration of summary judgment on the breach of contract claim, and granted Transamerica's renewed motion for summary judgment on the fraud and punitive damages claims.

¶ 6 Nearly three years later, Transamerica filed another motion for summary judgment on the breach of contract claim, which Judge Galati granted. Judge Galati's minute entry states:

... There is no dispute that defendant breached its contract with plaintiff by not procuring a backup policy to guarantee plaintiff's annuity. Defendant admitted as much in open court, and the Honorable John R. Sticht entered summary judgment in favor of plaintiff on breach of contract. However, a fair reading of the court's grant of summary judgment is that defendant has breached its contractual duty to plaintiff and does not include any determination regarding damages sustained by plaintiff. As a result, this court cannot rely upon this ruling to determine if plaintiff sustained ascertainable, noncontingent, and nonspeculative damages.

... Plaintiff claims that the failure to procure a backup policy damaged him through lack of security and peace of mind. However, such damage is speculative. Although a breach of contract has occurred, the cause of action will not begin to run until ascertainable, noncontingent, and nonspeculative damage occurs. *HSL Linda Gardens Properties, Ltd. v. Freeman,* 176 Ariz. 206, 207, 859 P.2d 1339, 1340 (App.1993).

Here, plaintiff has been paid all money owed to him to date. Moreover, defendant has obligated itself to pay any shortfalls that occur in the future. As a result, he has suffered no damages. Therefore, defendant is entitled to summary judgment. While defendant has breached a bargained for agreement, this must be balanced against preventing potentially needless litigation....

Judge Galati awarded Transamerica $12,500.00 in attorneys' fees and $5,024.05 in costs. Enyart filed a motion for a new trial or for reconsideration, which Judge Galati denied.

¶ 7 Enyart filed a timely notice of appeal.

## DISCUSSION

*Jurisdiction*

¶ 8 At the threshold, Transamerica argues this entire appeal should be dismissed on grounds of waiver and lack of jurisdiction. Transamerica argues that neither the final judgment nor any of the trial court's minute entry rulings are properly before us on appeal, and that the only appropriate issue, whether the trial court abused its discretion in denying Enyart's motion for a new trial, was waived because it was not raised or argued in the opening brief. Transamerica urges that the minute entries are not appealable because they were not signed by Judge Galati or Judge Sticht. Transamerica further urges that Enyart did not appeal from the final judgment filed October 7, 1996, in

spite of the fact that Enyart's notice of appeal specifically mentions the final judgment.

¶9 We disagree. Enyart's notice of appeal states:

> Plaintiff ... appeals from 1) the granting of the Motion for Summary Judgment on the breach of contract claim, granted by this Court, the Honorable Frank T. Galati, by minute order dated June 13, 1996; 2) the granting of the Renewed Motion for Summary Judgment on the common law fraud claim which was granted by this Court, the Honorable John R. Sticht, by minute order dated June 1, 1994; and 3) the granting of Transamerica's request for an award of attorneys' fees, granted by this Court, the Honorable Frank T. Galati, by minute order dated September 24, 1996.[1] Plaintiff also appeals from the denial of the Plaintiff's Motion for a New Trial and Motion to Reconsider, signed and entered by this Court, the Honorable Frank T. Galati, by written order dated October 31, 1996.

[1] All three of these minute orders were merged into the final judgment filed by the court on or about October 4, 1996.

The notice of appeal adequately perfected an appeal from the final judgment. Transamerica also argues that even if we have jurisdiction to review the final judgment, Enyart's issues on appeal are limited to the issues dealt with in the three specified minute entries (breach of contract, common law fraud, attorneys' fees). Again, we disagree. The order of final judgment refers to both the 1993 and 1996 motions for summary judgment. Since Enyart adequately appealed from the final judgment, we may consider all of the issues decided by Judges Sticht and Galati and raised by Enyart in his opening brief.

*Breach of Contract*

■ ¶10 Enyart argues that Judge Galati erred in granting summary judgment on his contract claim. He first contends that the stipulated summary judgment in his favor on the breach of contract claim should have precluded a subsequent summary judgment in favor of Transamerica.

¶11 We disagree. Judge Sticht specifically granted summary judgment in favor of Enyart on the breach of contract claim "on the issue of liability only." We agree with Judge Galati's view that because Judge Sticht's grant of summary judgment did not include a determination with regard to whether Enyart sustained ascertainable, non-contingent, and nonspeculative damages, he was free to rule on Transamerica's second motion for summary judgment.

■ ¶12 Enyart asserts that the breach of contract claim should not have been dismissed because he has been damaged. Enyart claims he has never been given the security he bargained for in the settlement, despite the fact that Transamerica has paid several shortfalls in annuity payments that have already occurred, because "Transamerica is not now, and never has been an A+, Class 15 company."

¶13 Enyart was damaged by Transamerica's breach. Transamerica agreed to do more than simply make annuity payments to Enyart; it also contracted to procure insurance for Enyart. An insurance contract is clearly a thing of value. In his discussion of contracts to insure, Tiffany states:

> In case of breach of the lessee's covenant to insure, the amount of recovery is, it seems, if no loss has taken place, the amount of premiums which the lessor may have to pay to effect the insurance, while in case of loss the amount of recovery has been decided to be the sum for which he agreed to insure, provided this is no greater than the amount of the loss, and not the amount of premiums which he would have paid.

Herbert Thorndike Tiffany, 1 *The Law of Landlord and Tenant*, 863 (1910). The Minnesota Supreme Court also recognizes that damages are available for breach of a failure to procure insurance prior to property loss:

> The right of action in case of a failure to issue a policy of insurance as agreed upon arises out of a breach of the contract to insure, not out of a contract for insurance. In case of a failure to issue a policy, the right to recover is fully matured when the agreement is violated, and the party to whom it was to be issued is not obliged to

wait until his property is destroyed by fire before instituting an action for damages. The general rule is that a cause of action for a breach of contract accrues immediately upon the happening of the breach, even though the actual damage resulting therefrom may not occur until afterward. . . .

If, when a suit is brought, there has been no destruction by fire, the plaintiff can recover the amount paid as the premium. . . . The person to whom the policy should have been issued may, however, take chances upon a loss, and if one occurs, bring his action to recover actual damages; but his right to sue upon a breach of the contract, and consequently the time when that right matures, cannot be made to depend upon the fact of a loss.

*Everett v. O'Leary*, 90 Minn. 154, 95 N.W. 901, 902 (Minn.1903). *See also Hey v. Wyche*, 1842 Q.B. 83 (plaintiff was entitled to damages for the risk to which he was exposed upon defendant's breach of agreement to procure insurance, notwithstanding that hazard to be insured against had not occurred). Because Enyart lost the benefit of his bargain here, he is entitled to immediate expectation damages (i.e., the cost of a replacement policy). We agree that Enyart's right to sue on the breach of contract claim fully matured when Transamerica failed to procure the backup annuity policy. We reverse Judge Galati's grant of summary judgment on the breach of contract claim.

*Tort of Bad Faith*

¶ 14 Enyart argues the trial court erred in granting summary judgment on his tort claim for bad faith. Arizona law implies a covenant of good faith and fair dealing in every contract. *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986). The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent the other contracting parties from receiving the benefits of the agreement. *Id.* Ordinarily, a party claiming breach of an implied covenant of good faith and fair dealing is limited to contract damages. *Burkons v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 345, 355, 813 P.2d 710, 720 (1991). In Arizona, a party may bring a tort action for breach of

an implied covenant if there is a "special relationship arising from elements of public interest, adhesion, and fiduciary responsibility." *Id.* In *Burkons*, our supreme court discussed the types of relationships giving rise to tort damages for breach of contract, stating:

Among the special relationships in which such tort damages for breach of contract may be available are those undertaken for something more than or other than commercial advantage, such as the procurement of service, professional help, security, or other intangibles. Also, the assessment of tort damages for breach of contract is a device most often allowed in situations in which the rule restricting recovery to contract damages would promote breach of contract rather than its performance.

*Id.* at 355, 813 P.2d at 720 (citations omitted).

¶ 15 Judge Sticht found that there was no fiduciary or other special relationship existing between Enyart and Transamerica that would support tort damages arising out of a breach of an implied covenant of good faith and fair dealing. Enyart argues that our supreme court recognized a cause of action in tort for insurer bad faith in an insurance contract in *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866 (1981), and that his own predicament is no different from that of the insured in *Noble*. We agree with Enyart.

¶ 16 In *Noble*, the court gave several reasons for its determination that the contract between an insured and an insurer is of such a "special nature" that insurer bad faith should be met with tort liability. These reasons include, *inter alia:*

— An insurance policy is obtained as protection against calamity, not for commercial advantage;

— when loss occurs the insured expects to have the protection provided by his insurance;

— when loss occurs the insured is often in an especially vulnerable economic position;

— the "whole purpose of insurance" fails if an insurance company can avoid paying a valid claim without justification. *Id.* at 190, 624 P.2d at 868.

¶ 17 Although we recognize that Transamerica's agreement here was to procure insurance and not to insure, we conclude that the considerations enunciated in support of the finding of a "special" relationship in *Noble* are compelling here. Enyart gave releases of his legal claims in return for promises that he would be insured against calamitous loss, and he has a right to expect protection against the vagaries of the economy and its effect on the financial health of the business entities responsible for making the payments to which he is entitled. Were the current sources of payment to Enyart to fail, he could be left destitute, and the whole purpose of his settlement egregiously denied. Enyart's desire for security so informed his agreement with Transamerica that the relationship between the parties, previously only that of potential adversaries in litigation, became one involving fiduciary obligations. Enyart had entrusted his security to Transamerica, and Transamerica welcomed Enyart's trust. If that trust was betrayed, Transamerica may be held liable in tort.

*Common Law Fraud*

¶ 18 Enyart argues Judge Sticht erred in granting summary judgment on his claim for common law fraud because there is substantial circumstantial evidence that Transamerica never intended to provide a backup annuity, and a question of material fact exists regarding whether Transamerica ever intended to fulfill the agreement. Enyart points to the lack of rate quotes from annuity brokers in Transamerica's claims file, Mr. McKinney's deposition statement that at the time he signed the agreement he did not believe Executive Life would ever go under, and the fact that Transamerica refused to purchase a backup annuity policy when Executive Life did fail.

A showing of fraud requires (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury. *Nielson v. Flashberg*, 101 Ariz. 335, 419 P.2d 514 (1966). Each element must be supported by sufficient evidence. "Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence." *In re McDonnell's Estate*, 65 Ariz. 248, 253, 179 P.2d 238, 241 (1947); *Fridenmaker v. Valley Nat'l Bank of Arizona*, 23 Ariz.App. 565, 534 P.2d 1064 (1975).

*Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982). "Unfulfilled promises may form the basis for actionable fraud where made with the present intention not to perform...." *Sun Lodge, Inc. v. Ramada Dev. Co.*, 124 Ariz. 540, 542, 606 P.2d 30, 32 (App.1979) (citing *Law v. Sidney*, 47 Ariz. 1, 5, 53 P.2d 64, 66 (1936)). Fraud must be proven by clear and convincing evidence. *Rice v. Tissaw*, 57 Ariz. 230, 237, 112 P.2d 866, 869 (1941). In ruling on a motion for summary judgment, the trial judge views the evidence in light of the substantive evidentiary burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The circumstantial evidence cited by Enyart does not establish that Transamerica entered into the settlement agreement with a present intention not to perform. The evidence produced by Transamerica (the McKinney affidavit), on the other hand, indicates that Transamerica intended to fulfill the settlement agreement at the time of the agreement. Because the fraud claim was not supported by sufficient evidence and there were no questions of material fact, Judge Sticht properly granted Transamerica's renewed motion for summary judgment on the common law fraud claim.

*The Consumer Fraud Claim*

¶ 19 Ariz.Rev.Stat.Ann. (A.R.S.) § 44–1522(A) provides:

The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such conceal-

78

ment, suppression or omission, *in connection with the sale or advertisement of any merchandise* whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

(Emphasis added.) The purpose of the Arizona Consumer Fraud Act is to eliminate unlawful practices in merchant-consumer transactions. *Madsen v. Western American Mortg. Co.*, 143 Ariz. 614, 694 P.2d 1228 (App.1985). Enyart argues Transamerica engaged in a sale of merchandise within the meaning of the Consumer Fraud Act "when it accepted consideration ... in the form of a release and promised to purchase ... a back-up annuity from an A+, Class 15 insurer." We disagree. A.R.S. § 44–1521(7) provides the definition of "sale":

> "Sale" means any sale, offer for sale, or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale.

Enyart cites no authority for the notion that a settlement constitutes a sale, nor have we found any. This case clearly does not involve a "sale." We find no error in the grant of summary judgment on the consumer fraud claim.

*A.R.S. § 20–443*

¶ 20 A.R.S. § 20–443 of the Arizona Insurance Code prohibits misrepresentations and false or misleading statements about the sale or advertisement of an insurance policy.[2] Enyart argues Transamerica violated § 20–443 by making "a misrepresentation in connection with the sale of an insur-

ance policy as defined by the Arizona statutes." We disagree. Transamerica neither sold nor advertised an insurance policy when it entered the settlement agreement with Enyart. Instead, it contracted to procure a back-up annuity from another insurer. Whether the back-up annuity would have been an insurance policy under Arizona law or not, A.R.S. § 20–443 does not apply.

*Attorneys' Fees*

¶ 21 Enyart requests us to reverse the trial court's award of attorneys' fees. Because we reinstate some of Enyart's claims on this appeal, we reverse the award of attorneys' fees. Enyart and Transamerica both request attorneys' fees on appeal pursuant to A.R.S. § 12–341.01. In our discretion, we decline to award appellate attorneys' fees to either party, pending the resolution of Enyart's claims below.

## CONCLUSION

¶ 22 The trial court's grant of summary judgment on Enyart's fraud, consumer fraud, and A.R.S. § 20–443 claims is affirmed. The grant of summary judgment on Enyart's breach of contract and bad faith claims is reversed. The award of attorneys' fees to Transamerica is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.

CONCURRING: NOEL FIDEL, Presiding Judge, and RUDOLPH J. GERBER, Judge.

2. A.R.S. § 20–443 provides:
**§ 20–443. Misrepresentations and false advertising of policies**
No person shall make, issue or circulate, or cause to be made, issued or circulated, any estimate, illustration, circular, sales material or statement:
1. Misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised or the dividends or share of the surplus to be received.
2. Making any false or misleading statement as to the dividends or share of surplus previously paid on similar policies.
3. Making any misleading representation or any misrepresentation as to the financial con-

dition of any insurer or as to the legal reserve system upon which any life insurer operates.
4. Using any name or title of any policy or class of policies misrepresenting the true nature of such policy.
5. Making any misrepresentation to any policyholder for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, surrender, retain or convert any insurance policy.
6. Referring to the coverage or any of the provisions of chapter 3, articles 6 or 7 of this title in connection with the sale or attempted sale of any policy of insurance.