NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HATCH INDUSTRIES, LLC,
an Arizona limited liability company,
*Plaintiff/Counter-Defendant/Appellee*,

*v.*

3B PROTECTION, INC., a California corporation;
JOHN and JANE DOES 1-99; ABC ENTITIES 1-99,
*Defendant/Counterclaimant/Appellant.*

No. 1 CA-CV 25-0738

FILED 06-16-2026

Appeal from the Superior Court in Navajo County
No. S0900CV202300213
The Honorable Melinda K. Hardy, Judge

**AFFIRMED**

COUNSEL

Tiffany & Bosco PA, Phoenix
By Amy D. Sells
*Counsel for Plaintiff/Counter-Defendant/Appellee*

Jaburg & Wilk PC, Phoenix
By Thomas S. Moring and David N. Farren
*Counsel for Defendant/Counterclaimant/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge James B. Morse Jr. joined.

---

**J A C O B S**, Judge:

¶1            Making a proper disclosure of your damages under Arizona Rule of Civil Procedure ("Rule") 26.1(a)(7) is important. 3B Protection, Inc. ("3B") appeals: (1) a summary judgment against it on its counterclaims that Hatch Industries, LLC ("Hatch") built a substandard wall, entitling 3B to damages; (2) a jury award to Hatch of $161,256.47 for its damages arising from 3B's failure to pay Hatch for that work; and (3) the court's award of costs, fees, and sanctions to Hatch premised on it prevailing at trial. Here, 3B failed to disclose how much damage it suffered, or witnesses or documents from which the amount of its damages could be proved, all of which Rule 26.1(a)(7) requires. As such, there was no issue of material fact as to its lack of provable damages. Additionally, the record does not support 3B's argument that the jury awarded duplicative damages. For these reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

### A.        Hatch and 3B Accuse Each Other of Breach of Contract.

¶2            PNM Resources, Inc. ("PNM") hired 3B to perform work at an electrical substation in Sandia, New Mexico. 3B subcontracted with Hatch to complete part of that work — building and installing a wall around the substation. Hatch finished its work on the wall and sent 3B a final invoice for $106,570.62. 3B didn't pay, so Hatch sued 3B, alleging breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.

¶3            3B denied Hatch's claims and counterclaimed for breach of contract and breach of the covenant of good faith and fair dealing. 3B said it didn't pay Hatch's invoice because Hatch's work was untimely, substandard, and more expensive than the estimate Hatch provided. Hatch denied 3B's counterclaims.

**B.      Hatch Disputes the Adequacy of 3B's Damages Disclosures.**

¶4      The superior court's scheduling order gave the parties until January 11, 2024 to make their initial disclosures under Rule 26.1(a) (a date the parties extended by agreement to January 25, 2024), and until May 19, 2024 to make their final supplemental disclosures.

¶5      3B's January 2024 initial disclosure averred that 3B "suffered loss of income, damage to reputation, delay, and inconvenience," and requested "damages in an amount to be determined at trial."  3B disclosed a report from Verti-Crete, LLC President Mike Sharp (the "Sharp Report"), which assessed the quality of Hatch's work on the Sandia wall.  3B listed Dominic Dillon, President and CEO of 3B, and Jarom Hatch, General Manager of Hatch, as trial witnesses, but disclosed no expert witnesses.

¶6      3B's April 2024 supplemental disclosure again claimed "loss of income, damage to reputation, delay, and inconvenience," and again requested "damages in an amount to be determined at trial."  3B said it suffered damages because of Hatch's poor work and because it believed PNM would not allow Hatch to perform repair or warranty work, so 3B would have to foot the bill if that work were requested in the future.  But 3B didn't quantify any damage.  Instead, it disclosed that the "exact numbers [of its damages] are not yet capable of calculation" because it was "still collecting invoices and amounts due to rectify the poor work done by Hatch."  3B suggested the use of this formula to calculate its damages at trial: 3B's Damages = Amounts Paid to Hatch for Poor Work + Cost of Future Repair, Warranty, or Replacement Work – Hatch's Claimed Damages.  3B acknowledged these variables were "presently unknown," and listed no new trial witnesses, expert witnesses, or exhibits to explain them.

¶7      Just before disclosure concluded, the parties filed a joint statement of discovery dispute under Rule 26(d) concerning the adequacy of 3B's damages disclosures.   Hatch argued 3B's disclosures were insufficient under Rule 26.1(a)(7), which requires "a computation and measure of each category of damages alleged by the disclosing party, the documents and testimony on which such computation and measure are based, and . . . each witness whom the disclosing party expects to call at trial to testify on damages."  Ariz. R. Civ. P. 26.1(a)(7).  3B maintained "[i]t is difficult to calculate with specificity the amount of damage suffered" because of Hatch's failures.  3B explained, "[t]he amount of lost sales is difficult to gauge, since they did not happen."  3B continued to argue that it would establish at trial using the disclosed formula what its damages

3

were, despite not being able to disclose the contents of the variables that were to be plugged into the formula. For reasons the record does not disclose, this discovery dispute was not resolved.

**B.      Hatch Serves an Offer of Judgment on 3B as to All Claims in This Suit, to Which 3B Does Not Respond.**

¶8            On April 8, 2024, Hatch served 3B with an offer of judgment under Rule 68, proposing to resolve all claims by accepting $170,000 from 3B "inclusive of all damages, taxable court costs, interest, and attorney's fees." 3B did not respond.

**C.      The Court Grants Hatch's Motion for Summary Judgment on 3B's Counterclaims.**

¶9            In June 2024, Hatch moved for summary judgment on 3B's counterclaims. Hatch argued damages were necessary for each of 3B's claims, but 3B could not "prove its damages with any certainty," because its disclosed evidence suggested it could not show it lost any income, suffered harm from inconvenience or delay, or suffered reputational harm. Hatch further pointed out that 3B admitted PNM accepted the wall and waived any alleged defects in Hatch's work, thus undermining any suggestion that 3B suffered damages.

¶10           3B opposed Hatch's motion, arguing it "produced evidence that shows damages suffered, and evidence from which a reasonable juror could conclude that 3B has been damaged." 3B again said it could not quantify its damages with any certainty — it claimed they "may be as little as an offset against some or all of Hatch's claims, or may be so high that it justified affirmative relief in favor of 3B" — but said it "disclosed a computation and measure of damages alleged" and that it would "provide testimony of disclosed witnesses related to the damages suffered." 3B relied on its final supplemental disclosure statement, the Sharp Report, and a declaration from Dominic Dillon (the "Dillon Declaration") stating that Hatch did poor work, that he believed PNM would not allow Hatch to conduct future remedial or warranty work because PNM "reluctantly accepted the wall," and that 3B would therefore be "forced to find another company to subcontract with to remedy the work done by Hatch" if "remedial work or warranty work is requested."

¶11           In reply, Hatch argued that 3B's disclosures, the Sharp Report, and the Dillon Declaration were either inadmissible or, to the extent admissible, insufficiently specific to create a genuine issue of material fact as to 3B's claimed damages. Hatch also noted that 3B admitted — in a

deposition taken after Hatch moved for summary judgment — it was paid in full by PNM for Hatch's work and had paid nothing to remedy any of Hatch's work.

¶12        After argument, the court granted Hatch's motion for summary judgment, dismissing 3B's counterclaims. The court found that: 3B's disclosed estimates of its damages were speculative and wide-ranging; neither the Sharp Report nor the Dillon Declaration "address or identify damages suffered by 3B or provide a basis to compute the damages"; the uncontroverted evidence showed PNM paid 3B in full and accepted and waived any defects in the wall, therefore precluding the possibility of future work for which Hatch would be liable; and the uncontroverted evidence showed 3B had not yet paid anything to "fix" any of Hatch's allegedly poor work. The court concluded "3B failed to show a reasonable basis to identify any evidence that it suffered damages on its counterclaims" and "as a matter of law 3B cannot establish that 3B suffered damages . . . that can be calculated with reasonable certainty."

**D.    A Jury Awards Hatch Damages After Trial and the Court Enters Final Judgment in Favor of Hatch.**

¶13        A jury heard Hatch's claims against 3B in June 2025. Near the end of trial, Hatch's counsel sought court guidance on whether it could ask the jury to award 2% per month pre-judgment interest, the undisputed amount provided for in the invoice 3B did not pay, on its requested $106,570.62 in damages, or whether it should ask the jury not to award interest so that the court could determine whether the 2% per month or the statutory interest rate applied. The court and 3B's counsel agreed Hatch's counsel could ask the jury to proceed however she chose. In closing, Hatch's counsel asked the jury to award Hatch $106,570.62, the amount of the final unpaid invoice, and $54,615.82, the exact sum of the 2% per month interest rate if the jury returned a verdict the next day. Hatch's counsel walked the jury through the math required to reach that total and told the jury it could calculate interest up to the day of its verdict.

¶14        The jury found in favor of Hatch on its breach of contract and breach of the covenant of good faith and fair dealing claims. The verdict form didn't have a box for interest but had blanks to award damages for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) unjust enrichment. The jury awarded Hatch $106,570.62, which it filled in the blank for damages on the claim for breach of contract, and $54,685.85 for interest, which it filled in the blank for damages on the claim for breach of the covenant of good faith and fair dealing.

**¶15**        Hatch asked the court to enter a judgment awarding it the exact sums in the jury's verdicts, costs as the successful party under A.R.S. § 12-341, attorneys' fees (as provided for in the parties' contract), and sanctions for rejecting the offer of judgment but failing to obtain a more favorable outcome. 3B objected to Hatch's proposed judgment, arguing the jury awarded duplicate damages for the same injury, so a new trial was warranted. 3B also objected to Hatch's requested costs, attorneys' fees, and sanctions.

**¶16**        The court entered Hatch's proposed judgment, including the damages the jury awarded, and the costs, attorneys' fees, and sanctions Hatch requested. 3B appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶17**        On appeal, 3B argues the court erred by: (1) granting Hatch's motion for summary judgment, either because there was a genuine issue of material fact concerning 3B's damages, or because the summary judgment ruling was an impermissible Rule 37 sanction; (2) adopting the jury's allegedly duplicative awards; and (3) awarding Hatch costs, attorneys' fees, and sanctions because Hatch shouldn't have prevailed. Hatch defends the propriety of each challenged ruling. Hatch is right, as we next explain.

### I.        3B Failed to Demonstrate a Genuine Issue of Material Fact Regarding Its Claimed Damages.

**¶18**        We review the grant of summary judgment *de novo*, reviewing the record in the light most favorable to the non-moving party. *Amtrust Bank v. Fossett*, 223 Ariz. 438, 439 ¶ 4 (App. 2009). When the party moving for summary judgment shows that the non-moving party has insufficient evidence to carry its ultimate burden of proof at trial, the burden shifts to the non-moving party to present sufficient evidence demonstrating the existence of a genuine factual dispute. *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119 ¶ 26 (App. 2008); Ariz. R. Civ. P. 56(c), (e).

**¶19**        Because damages are an element of both of 3B's claims, 3B had to point to evidence sufficient to establish that a reasonable trier of fact could agree with its assertion that it suffered damages resulting from Hatch's alleged breaches. *See Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96 ¶ 16 (2013) (breach of contract claim requires proving damages); *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 76 ¶ 14 (App. 1998) (breach of the covenant of good faith and fair dealing requires proving damages). The court's scheduling order required 3B to disclose by May 19, "a computation

and measure of each category of damages [3B] alleged . . . the documents and testimony on which such computation and measure are based, and the name, address, and telephone number of each witness [3B] expects to call at trial to testify on damages."  Ariz. R. Civ. P. 26.1(a)(7).

**¶20**        But 3B didn't make a disclosure that complied with Rule 26.1(a)(7).  Instead, 3B disclosed a formula it said could be used to calculate its damages.  And the formula rested on variables no disclosed testimony or exhibits could fill in.  3B said it was trying to track down documents to help it quantify the amounts to be used in its formula, but it didn't say which documents it was looking for, or how they would fill in the variables.  And while 3B did identify two witnesses it expected to call at trial, it did not disclose "a description of the substance — and not merely the subject matter — of the testimony" it expected those witnesses would provide regarding the amount of its alleged damages.  Ariz. R. Civ. P. 26.1(a)(3).

**¶21**        Hatch's motion for summary judgment exposed this deficiency.  It was 3B's burden "to show the amount of their damages with reasonable certainty," meaning it had to offer evidence upon which a trier of fact could approximately estimate its damages.  *See Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963).  3B pointed to its Rule 26.1(a)(7) disclosure (which contained its formula), the Sharp Report, and the Dillon Declaration.  Viewed in the light most favorable to 3B, this evidence suggested that: a non-party (Verti-Crete President Sharp) would testify that Hatch's work on the wall did not meet aesthetic requirements; and 3B's President would testify to his belief that PNM was unhappy with the work so 3B might have to fix it — but again, disclosing no asserted cost for repair.

**¶22**        3B's evidence was insufficient for a trier of fact to determine the amount of 3B's damages with any reasonable certainty.  *See Gilmore*, 95 Ariz. at 36 (Though "certainty in amount of damages is not essential to recovery when the *fact* of damage is proven," that does not "dispel [the] requirement that the [party's] evidence provide some basis for estimating his loss." (citations omitted) (cleaned up)); *see also Short v. Riley*, 150 Ariz. 583, 585-86 (App. 1986) ("Once the fact of damages has been proven, the amount of the damages may be shown with proof of a lesser degree of certainty than is required to establish the fact of damage," but "[t]he law still requires 'a reasonable basis in the evidence for the trier of fact to fix compensation when a dollar loss is claimed.'" (quoting *Nelson v. Cail*, 120 Ariz. 64, 67 (App. 1978) (citations omitted)).

**¶23**        To put a finer point on it, even if Hatch's work was faulty, it is undisputed that PNM paid for it in full and waived any defects.  Thus,

3B received the benefit of its contract with PNM, and any possible future expenditures to fix the work were unquantified, and whether those expenses would be incurred was entirely speculative. But "conjecture or speculation cannot provide the basis for an award of damages." *Gilmore*, 95 Ariz. at 36. Thus, even drawing all reasonable inferences in 3B's favor, 3B failed to establish a genuine issue of material fact as to its damages. *See State Comp. Fund v. Yellow Cab Co. of Phx.*, 197 Ariz. 120, 122 ¶ 5 (App. 1999).

¶24 3B suggests two other reasons for overturning the court's summary judgment ruling, but neither persuades.

¶25 *First*, 3B argues summary judgment was improper because Hatch first argued in its reply brief that 3B's evidence was insufficient for a reasonable jury to find it proved its damages. 3B's premise is wrong. Hatch's motion argued, based on the evidence 3B had disclosed, that "3B cannot establish with reasonable certainty that it suffered any damages, which it admitted in its final supplemental disclosure statement," so "there is no genuine issue of material fact that 3B has not suffered any damages as a result of Hatch Industries' alleged breach[es]." Ironically, 3B only raised this argument in its reply brief in this Court, so this argument is also waived. *See Univ. Med. Ctr. of S. Nev. v. Health Choice Ariz.*, 253 Ariz. 524, 529 ¶ 22 n.2 (App. 2022).

¶26 *Second*, 3B argues the court's summary judgment ruling was "effectively" a Rule 37 sanction for disclosure violations, asserting it was unfair and error to impose such a sanction without appropriate process. That position misunderstands or mischaracterizes Hatch's motion, which was a classic "no-evidence" motion. Such motions properly request summary judgment when the nonmovant has no admissible evidence of an element of their claim. 3B wasn't sanctioned. It was challenged to present evidence creating a material issue of fact under Rule 56, and it was unable to do so. Finally, 3B's argument fails because neither party nor the court mentioned Rule 37 during the parties' summary judgment motion practice. Summary judgment under Rule 56 is not a discovery sanction under Rule 37. *See Tilley v. Delci*, 220 Ariz. 233, 238 ¶ 13 (App. 2009).

## II. The Jury Did Not Improperly Award Duplicate Damages.

¶27 3B next argues the court's final judgment impermissibly adopted the jury's damages awards, which it says were duplicative. On review, we "must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and [we] must exhaust this effort

before [we] disregard[] the jury's verdicts." *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 138 ¶ 19 (App. 2006).

**¶28** 3B is correct that "a plaintiff may not receive two separate awards of damage to compensate it for the selfsame injury." *Smith v. Olsen*, 257 Ariz. 518, 529-30 ¶ 43 (App. 2024) (quoting Restatement (Third) of Torts: Remedies § 3). But we affirm verdicts where there is a "reasonable way" for us "to read the verdicts as expressing a coherent view of the case." *See United Dairymen*, 212 Ariz. at 138 ¶ 19. There is here, and it goes like this:

**¶29** Hatch asked the jury to award it $106,570.62, the amount of the final unpaid invoice, and approximately $54,615.82 (depending on the day the jury reached its verdict) representing the 2% per month pre-judgment interest the unpaid invoice called for. The court and 3B's counsel agreed Hatch could make this request.

**¶30** The jury did exactly what Hatch asked. On its verdict form, the jury awarded Hatch $106,570.62 for "breach of contract," and $54,685.85 for "breach of the covenant of good faith and fair dealing." The latter was the exact amount of interest, calculated to the day, Hatch sought. The fact that the jury split the money between the two claims does not make its awards duplicative. The verdict forms had no separate place to note awards of interest, so this jury's use of the verdict forms suggests the jury accepted Hatch's position that it was entitled to the amount of the unpaid invoice and to 2% per month pre-judgment interest on that amount. Given that the award expresses a coherent view of the case, *see United Dairymen*, 212 Ariz. at 138 ¶ 19, we decline to set aside the jury's verdicts, or the judgment founded on them.

## III.    Hatch Was the Prevailing Party, So We Decline to Reverse the Court's Award of Costs, Attorneys' Fees, and Sanctions.

**¶31** 3B argues the jury's verdict was erroneous, warranting a new trial, and on that basis asks us to set aside the costs, attorneys' fees, and Rule 68 sanctions the court awarded to Hatch. As we have explained, we see no error in the jury's verdict or in the court's summary judgment ruling, so we decline to disturb the awarded costs, attorneys' fees, or Rule 68 sanctions.

## CONCLUSION

**¶32** We affirm. Hatch requests its attorneys' fees and costs on appeal under ARCAP 21 and A.R.S. § 12-341.01. We grant Hatch its costs and reasonable attorneys' fees, subject to its compliance with ARCAP 21.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR